[No. S058825. Sept. 21, 1998.]

THE PEOPLE, Plaintiff and Appellant, v.
RUDOLFO REYES, Defendant and Appellant.

## COUNSEL

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General,

Michael J. Weinberger, Shirley A. Nelson, Margaret Garnand Venturi and Rachelle A. Newcomb, Deputy Attorneys General, for Plaintiff and Appellant.

William J. Arzbaecher III, under appointment by the Supreme Court, for Defendant and Appellant.

Jose R. Villarreal, Public Defender (Santa Clara), Ronald A. Norman, Alternate Public Defender, and Stephen B. Elrick, Deputy Public Defender, as Amici Curiae on behalf of Defendant and Appellant.

## OPINION

**BROWN, J.**—In *People* v. *Burgener* (1986) 41 Cal.3d 505 [224 Cal.Rptr. 112, 714 P.2d 1251] (hereafter *Burgener*), this court held a parolee subject to a search condition still retains a reasonable, though somewhat diminished, expectation of privacy under the Fourth Amendment. Thus, a warrantless search of his person or property must be justified by at least a reasonable suspicion "that the parolee has violated the law or another condition of his parole, or is planning to do so." (41 Cal.3d at p. 533, fn. omitted.) Subsequently, in *In re Tyrell J.* (1994) 8 Cal.4th 68 [32 Cal.Rptr.2d 33, 876 P.2d 519] (hereafter *Tyrell J.*), we upheld the warrantless search of a juvenile probationer, subject to a search condition, because he did not have "a *reasonable* expectation of privacy over his . . . person or property" (*id.* at p. 86) that society is "willing to recognize as legitimate." (*Id.* at p. 89.) The Attorney General contends there is no constitutionally significant difference between an adult parolee and a juvenile probationer in these circumstances. Thus, in light of *Tyrell J.*, reasonable suspicion is no longer a prerequisite to a lawful search of a parolee. The Court of Appeal concluded *Burgener* remains good law and the standard articulated in *Tyrell J.* does not apply to adult parolees. We granted review to resolve the tension apparent in our precedents and to decide whether the logic of *Tyrell J.* has significance in the context of adult parole searches.

### I. PROCEDURAL AND FACTUAL BACKGROUND

Defendant was released on parole and signed a parole agreement including a standard search condition: "[Y]ou and your residence and any property under your control may be searched without a warrant by an agent of the Department of Corrections or any law enforcement officer." Defendant's parole agent, Gordon McClaskey, contacted the Woodlake Police Department after receiving an anonymous telephone tip, and asked the

officers to evaluate defendant to see if he was under the influence of drugs. Later that evening, the police officers saw defendant coming out of a shed in his backyard. They searched the shed and found a small amount of methamphetamine.

The trial court denied defendant's motion to suppress the evidence. The court found the evidence available to the parole agent more than satisfied the reasonable suspicion standard. Defendant pled guilty and admitted one prior felony conviction. The Court of Appeal reversed his conviction because, in its view, the search was not supported by reasonable suspicion,[1] which is a prerequisite to a lawful parole search. We granted the Attorney General's petition for review to consider whether reasonable suspicion is still required for a lawful parole search based on a search condition.[2]

## II. DISCUSSION

### A. *Introduction*

In *Griffin* v. *Wisconsin* (1987) 483 U.S. 868 [107 S.Ct. 3164, 97 L.Ed.2d 709] (hereafter *Griffin*), the United States Supreme Court considered the constitutional limits applicable to probation searches. The court reviewed a state regulation permitting a probation officer to search a probationer's home without a warrant if the officer reasonably suspected the presence of contraband and the officer's supervisor approved the search. Conceding at the outset that "[a] probationer's home, like anyone else's, is protected by the Fourth Amendment's requirement that searches be 'reasonable,' " the court stopped short of equating reasonableness with particularized suspicion. (*Id.* at p. 873 [107 S.Ct. at p. 3168].) In fact, the court declined the opportunity to "embrace a new principle of law" and articulate a federal reasonable grounds standard. (*Id.* at pp. 872, 880 [107 S.Ct. at pp. 3168, 3172].) The court noted neither probationers nor parolees enjoy " 'the absolute liberty to

---

[1]We note that although the trial judge found the evidence more than sufficient to support a finding of reasonable suspicion, the Attorney General does not challenge the Court of Appeal's holding that reasonable suspicion was lacking in the present case. We express no opinion on that aspect of the case.

[2]Following oral argument in this case, the United States Supreme Court granted certiorari in *Pennsylvania Bd. of Probation and Parole* v. *Scott* (1997) 523 U.S. __ [118 S.Ct. 554, 139 L.Ed.2d 397]. In addition to the question presented by the petitioner, the court invited the parties to brief and argue the following: "Must a search of a parolee's residence be based on reasonable suspicion to be valid under the Fourth Amendment where the parolee has consented to searches as a condition of his parole?" (*Ibid.*) In light of the possible implications for the issue before us, we vacated submission pending the decision in *Scott*. In rendering its opinion, however, the high court found it unnecessary to reach this additional question in light of its conclusion that the exclusionary rule does not apply to parole revocation proceedings. (*Pennsylvania Bd. of Probation and Parole* v. *Scott* (1998) 523 U.S. __, __, fn. 3 [118 S.Ct. 2014, 2019, 141 L.Ed.2d 344].)

which every citizen is entitled, but only . . . conditional liberty properly dependent on observance of special [probation] restrictions.' " (*Id.* at p. 874 [107 S.Ct. at p. 3169], quoting *Morrissey* v. *Brewer* (1972) 408 U.S. 471, 480 [92 S.Ct. 2593, 2600, 33 L.Ed.2d 484].)

The court acknowledged that a "[s]tate's operation of a probation system, like its operation of a school, government office or prison, or its supervision of a regulated industry, likewise presents 'special needs' beyond normal law enforcement" that justify departure from the usual warrant and probable cause requirements. (*Griffin, supra,* 483 U.S. at pp. 873-874 [107 S.Ct. at p. 3168].) The court also recognized supervision as a " 'special need' " of the state "permitting a degree of impingement upon privacy that would not be constitutional if applied to the public at large." (*Id.* at p. 875 [107 S.Ct. at p. 3169].)

### B. *The State Standards Applicable to Parole and Probation Searches*

Among our own cases, *Burgener, People* v. *Bravo* (1987) 43 Cal.3d 600 [238 Cal.Rptr. 282, 738 P.2d 336], and *Tyrell J.* illustrate what a moveable feast the Fourth Amendment can be. In *Burgener,* an adult parolee, subject to a warrantless search condition, became the prime suspect in the police investigation of a robbery and murder at a convenience store. The search was authorized by the defendant's parole agent after the police related the circumstances leading them to believe the defendant was involved. We relied on a balancing test to find imposition of a warrantless search condition was not "per se unreasonable if conducted for a purpose properly related to parole supervision." (*Burgener, supra,* 41 Cal.3d at p. 532.) However, in assessing the validity of the parole search, we returned to a consideration of the warrant requirement and the probable cause standard before concluding a lesser standard of reasonable suspicion would suffice. "The balance thus falls heavily on the side of the governmental interest in public safety, and leads to a conclusion that the appropriate standard of reasonableness to justify a parole search is a reasonable suspicion on the part of the parole officer that the parolee is again involved in criminal activity, or has otherwise violated his parole, and that the search may turn up evidence of that activity, or that evidence of a proposed future violation by the parolee will be uncovered. That suspicion must of course be based on articulable facts which together with rational inferences from those facts warrant objectively reasonable suspicion." (*Id.* at p. 535.)

In *People* v. *Bravo, supra,* 43 Cal.3d 600 (hereafter *Bravo*), an anonymous informant told police the volume of traffic in and around the defendant's home indicated he was involved in the sale of narcotics. The defendant was

an adult probationer subject to a warrantless search condition. Although police surveillance failed to confirm any suspicious activity, the officers learned the defendant was on probation and searched his residence. The search led to the seizure of cocaine, firearms and cash. The defendant challenged the search, claiming the officers' actions were unlawful because they lacked reasonable suspicion. We disagreed. An adult probationer consents to a waiver of his Fourth Amendment rights in exchange for the opportunity to avoid serving a state prison sentence. (43 Cal.3d at p. 608.) " '[W]hen [a] defendant in order to obtain probation specifically [agrees] to permit at any time a warrantless search of his person, car and house, he voluntarily [waives] whatever claim of privacy he might otherwise have had.' " (*Id.* at p. 607, quoting *People* v. *Mason* (1971) 5 Cal.3d 759, 766 [97 Cal.Rptr. 302, 488 P.2d 630].) "We read the consent in *Mason* as a complete waiver of that probationer's Fourth Amendment rights, save only his right to object to harassment or searches conducted in an unreasonable manner." (*Bravo, supra,* 43 Cal.3d at p. 607.) "*Bravo* . . . establishes that an adult probationer subject to a search condition may be searched by law enforcement officers having neither a search warrant nor even reasonable cause to believe their search will disclose any evidence." (*Tyrell J., supra,* 8 Cal.4th at p. 80, fn. omitted.)

The consent exception to the warrant requirement may not be invoked to validate the search of an adult parolee because, under the Determinate Sentencing Act of 1976, parole is not a matter of choice. The Board of Prison Terms must provide a period of parole; the prisoner must accept it. (Pen. Code, § 3000 et seq.) Without choice, there can be no voluntary consent to inclusion of the search condition. (See *Burgener, supra,* 41 Cal.3d at p. 529.)

In *Tyrell J.,* an officer on patrol during a high school football game saw Tyrell J. and two other minors, all identified as members of the U-Boys gang—a group involved in a shooting incident a week earlier. Because one of the boys was wearing a heavy quilted coat in 80-degree heat, the officer stopped the trio. The officer retrieved a large hunting knife from the youngster wearing the coat. Because Tyrell J. made several furtive adjustments to his clothing, the officer conducted a patdown search and retrieved a bag of marijuana the juvenile had partially concealed in his pants. Tyrell J. was on juvenile probation and subject to a warrantless search condition of which the officer was unaware.

Because a juvenile has no right to refuse probation, we declined to apply *Bravo*'s advance consent rationale. The juvenile court's broad discretion is distinguishable from that exercised by adult courts and juvenile probation is

not an act of leniency but a final order made in the juvenile's best interest. Since the minor has no choice, the search does not fall within the consent exception outlined in *Bravo*. (*Tyrell J., supra,* 8 Cal.4th at pp. 81-83.)

Nevertheless, this court upheld the search. We found "the circumstances surrounding the challenged search reveal[ed] [the minor's] expectation of privacy is not one society is prepared to recognize as reasonable and legitimate. We conclude[d] a juvenile probationer subject to a valid search condition does not have a *reasonable* expectation of privacy over his or her person or property." (*Tyrell J., supra,* 8 Cal.4th at p. 86.)

Unlike *Burgener,* which sought to calibrate precisely what level of suspicion could reasonably substitute for probable cause, *Tyrell J.* considered what expectation of privacy could reasonably trigger a requirement for individualized suspicion. Although *Tyrell J.* does not precisely answer the question presented here, in these limited circumstances, its contextual approach seems preferable to the more rigid formulations of earlier cases. ■ "The purpose of the Fourth Amendment prohibition is to 'safeguard the privacy and security of individuals against *arbitrary* invasions by governmental officials.'" (*People* v. *Banks* (1993) 6 Cal.4th 926, 934 [25 Cal.Rptr.2d 524, 863 P.2d 769], italics added, quoting *Camara* v. *Municipal Court* (1967) 387 U.S. 523, 528 [87 S.Ct. 1727, 1730, 18 L.Ed.2d 930].) What is reasonable depends upon all the circumstances surrounding the search and seizure. (*New Jersey* v. *T.L.O.* (1985) 469 U.S. 325, 337-342 [105 S.Ct. 733, 740-743, 83 L.Ed.2d 720] (hereafter *T.L.O.*).)

### C.  *Resolving the Tension*

■  Our varying approaches to similar Fourth Amendment scenarios give rise to the question presented here: Should the rationale of *Tyrell J.,* i.e., the status of a juvenile probationer subject to close supervision, coupled with the special needs exception to the warrant requirement, be extended to validate suspicionless searches of adult parolees? Or, should the "reasonableness" of a parole search still depend on a showing of reasonable suspicion as required under *Burgener*?

In the wake of *Tyrell J.,* the Attorney General argues the standard "should be the same." Because "there are no significant differences, for Fourth Amendment purposes," between search conditions imposed involuntarily on adult parolees and those imposed involuntarily on juvenile probationers, the Attorney General suggests "society should not be required to recognize a reasonable expectation of privacy beyond the basic guarantee against unreasonable searches." Defendant disagrees. He would limit the holding in *Tyrell*

*J.* to juvenile probationers; however, if "there is no constitutionally significant distinction," he argues all parole and probation searches should be governed "not by the *Bravo* 'arbitrary and capricious' standard, but by the *Burgener* (and *Griffin*) 'reasonable suspicion' standard."

The Court of Appeal adopted defendant's view, distinguishing *Tyrell J.* and holding that "reasonable suspicion remains a requirement for conducting a search of a parolee's home."

We think the Attorney General offers the better argument. The "logic of *Tyrell J.* applies equally, if not more so, to parolees." Because of society's interest both in assuring the parolee corrects his behavior and in protecting its citizens against dangerous criminals, a search pursuant to a parole condition, without reasonable suspicion, does not "intrude on a *reasonable* expectation of privacy, that is, an expectation that society is willing to recognize as legitimate." (*Tyrell J., supra*, 8 Cal.4th at p. 89.) We agree.

■ The United States Supreme Court has conceded that "although 'some quantum of individualized suspicion is usually a prerequisite to a constitutional search or seizure[,] . . . the Fourth Amendment imposes no irreducible requirement of such suspicion.' " (*T.L.O., supra*, 469 U.S. at p. 342, fn. 8 [105 S.Ct. at p. 743], quoting *United States* v. *Martinez-Fuerte* (1976) 428 U.S. 543, 560-561 [96 S.Ct. 3074, 3084, 49 L.Ed.2d 1116]; see *Treasury Employees* v. *Von Raab* (1989) 489 U.S. 656, 665 [109 S.Ct. 1384, 1390, 103 L.Ed.2d 685] [rejecting claim that "any measure of individualized suspicion . . . is an indispensable component of reasonableness in every circumstance"]; *Skinner* v. *Railway Labor Executives' Assn.* (1989) 489 U.S. 602, 624 [109 S.Ct. 1402, 1417, 103 L.Ed.2d 639] ["[A] showing of individualized suspicion is not a constitutional floor, below which a search must be presumed unreasonable."].)

In determining whether a suspicionless intrusion is justified, the court has looked at several factors: (1) the individual's interest, (2) the government's interest, (3) the necessity for the intrusion, and (4) the procedure used in conducting the search. To assess the first factor, the court looks to a hierarchy of privacy interests. Reasonable expectations of privacy that society is prepared to recognize as legitimate receive the greatest level of protection; diminished expectations of privacy are more easily invaded; and subjective expectations of privacy that society is not prepared to recognize as legitimate have no protection. (*T.L.O., supra*, 469 U.S. at pp. 337-338 [105 S.Ct. at pp. 740-741]; see *Hudson* v. *Palmer* (1984) 468 U.S. 517, 526 [104 S.Ct. 3194, 3200, 82 L.Ed.2d 393]; *Rakas* v. *Illinois* (1978) 439 U.S. 128, 148-149 [99 S.Ct. 421, 433, 58 L.Ed.2d 387].)

When parole or probation searches are involved, the balance struck between individual interest and government necessity is implicit in the determination that a "warrantless search condition is a reasonable term" in a parole or probation agreement. (*Burgener, supra,* 41 Cal.3d at p. 532; see *Tyrell J., supra,* 8 Cal.4th at p. 87 ["To better effectuate the rehabilitation of the juvenile, the condition of probation permitting police (and others) to conduct warrantless searches is imposed by the juvenile court to serve the important goal of deterring future misconduct."].)

The rationale of *Tyrell J.* can be stated succinctly. ██ When involuntary search conditions are properly imposed, reasonable suspicion is no longer a prerequisite to conducting a search of the subject's person or property. Such a search is reasonable within the meaning of the Fourth Amendment as long as it is not arbitrary, capricious or harassing. *Tyrell J.'s* reasoning applies with equal force to adults. In both cases the expectation of privacy is already reduced by the absence of the warrant requirement. As a convicted felon still subject to the Department of Corrections, a parolee has conditional freedom—granted for the specific purpose of monitoring his transition from inmate to free citizen. The state has a duty not only to assess the efficacy of its rehabilitative efforts but to protect the public, and the importance of the latter interest justifies the imposition of a warrantless search condition.

██ The threat of a suspicionless search is fully consistent with the deterrent purposes of the search condition. " 'The purpose of an unexpected, unprovoked search of defendant is to ascertain whether [the parolee] is complying with the terms of [parole]; to determine not only whether he disobeys the law, but also whether he obeys the law. Information obtained under such circumstances would afford a valuable measure of the effectiveness of the supervision given the defendant . . . .' " (*People* v. *Mason, supra,* 5 Cal.3d at p. 763, quoting *People* v. *Kern* (1968) 264 Cal.App.2d 962, 965 [71 Cal.Rptr. 105].)

More importantly, the government's action is triggered by defendant's own conduct. The existence of this triggering event—the crime which results in conviction or juvenile adjudication—creates the compelling need for government intervention and diminishes any reasonable expectation of privacy.

Other courts reached similar conclusions both before and after the *Griffin* decision. In *Owens* v. *Kelley* (11th Cir. 1982) 681 F.2d 1362, 1368, the court declined to impose a reasonable suspicion standard on warrantless probationary searches because such a requirement "could completely undermine the

purpose of the search condition." (Fn. omitted.) In *State* v. *Zeta Chi Fraternity* (1997) 142 N.H. 16 [696 A.2d 530, 540-541], the New Hampshire Supreme Court held warrantless random searches of probationers not based on particularized suspicion are constitutionally permissible if the search is authorized as a condition of probation, related to the rehabilitation and supervision of the probationer, and conducted in a manner that is reasonable in time, scope, and frequency. "Unannounced searches, even when the probation officer does not suspect that the probationer is violating his probation conditions, may be essential to adequately monitor the probationer's rehabilitation and protect the public." (*Id.* at p. 539.)

In *Burgener*, we analyzed parole searches along with "other administrative searches" and concluded " 'The determination of the standard of reasonableness governing any specific class of searches requires "balancing the need to search against the invasion which the search entails." ' " (*Burgener, supra,* 41 Cal.3d at p. 534, quoting *Camara* v. *Municipal Court, supra,* 387 U.S. at pp. 536, 537 [87 S.Ct. at pp. 1734-1735].) While acknowledging that the balance fell heavily on the side of the government interest in public safety, we nevertheless concluded reasonable suspicion was the appropriate standard to justify a parole search. (*Burgener, supra,* 41 Cal.3d at p. 535.)

In more recent administrative search cases, however, the United States Supreme Court has upheld suspicionless searches "where an important governmental interest furthered by the intrusion would be placed in jeopardy by a requirement of individualized suspicion." (*Skinner* v. *Railway Labor Executives' Assn., supra,* 489 U.S. at pp. 624, 631 [109 S.Ct. at pp. 1417, 1420-1421]; *Treasury Employees* v. *Von Raab, supra,* 489 U.S. at p. 674 [109 S.Ct. at p. 1395].)

A similar balance applies to parolees who are subject to limitations not applicable to ordinary citizens. The level of intrusion is de minimis and the expectation of privacy greatly reduced when the subject of the search is on notice that his activities are being routinely and closely monitored. Moreover, the purpose of the search condition is to deter the commission of crimes and to protect the public, and the effectiveness of the deterrent is enhanced by the potential for random searches. We thus conclude a parole search may be reasonable despite the absence of particularized suspicion.

However, our holding that particularized suspicion is not required in order to conduct a search based on a properly imposed search condition does not mean parolees have no protection. As explained in *People* v. *Clower* (1993) 16 Cal.App.4th 1737 [21 Cal.Rptr.2d 38], "a parole search could become constitutionally 'unreasonable' if made too often, or at an unreasonable hour, or if unreasonably prolonged or for other reasons establishing arbitrary or

oppressive conduct by the searching officer." (*Id.* at p. 1741; *United States* v. *Follette* (S.D.N.Y. 1968) 282 F.Supp. 10, 13; see *In re Anthony S.* (1992) 4 Cal.App.4th 1000, 1004 [6 Cal.Rptr.2d 214] [a search is arbitrary and capricious when the motivation for the search is unrelated to rehabilitative, reformative or legitimate law enforcement purposes, or when the search is motivated by personal animosity toward the parolee]; *People* v. *Bremmer* (1973) 30 Cal.App.3d 1058, 1062 [106 Cal.Rptr. 797] [unrestricted search of a probationer or parolee by law enforcement officers at their whim or caprice is a form of harassment].)

Where the search is for a proper purpose, we hold that, even in the absence of particularized suspicion, a search conducted under the auspices of a properly imposed parole search condition does not intrude on any expectation of privacy "society is 'prepared to recognize as legitimate.'" (*T.L.O., supra,* 469 U.S. at p. 338 [105 S.Ct. at p. 741]; *Hudson* v. *Palmer, supra,* 468 U.S. at p. 526 [104 S.Ct. at p. 3200].)

### D. *Retroactive Application*

On rehearing, defendant urges that our decision to overrule the "reasonable suspicion" requirement of *Burgener* cannot affect paroles, such as his, that stem from crimes committed before the new rule was announced. The premise is that by applying such a case law reversal to paroles already in effect, we would violate principles of due process analogous to the ex post facto clause by making more burdensome the punishment for crimes already committed (i.e., the crimes for which parole is being served). (See *Collins* v. *Youngblood* (1990) 497 U.S. 37, 42 [110 S.Ct. 2715, 2719, 111 L.Ed.2d 30] (*Collins*); *Bouie* v. *City of Columbia* (1964) 378 U.S. 347, 353-354 [84 S.Ct. 1697, 1702-1703, 12 L.Ed.2d 894]; *People* v. *King* (1993) 5 Cal.4th 59, 79-80 [19 Cal.Rptr.2d 233, 851 P.2d 27].)

The People suggest that defendant waived the point by failing to raise it in timely fashion.[3] However, we need not linger on that question, for the People have now fully briefed the merits of the retroactivity issue, and they themselves urge that we resolve it. It seems prudent to do so. We would not wish to risk committing a due process violation by our own unexamined decision to apply our new rule to this defendant's case. Moreover, such a disposition might complicate future efforts to decide the retroactivity issue properly in another proceeding involving a similarly situated parolee. We therefore proceed to the merits.

In doing so, we need not determine whether the *substantive right* to be free of suspicionless parole searches can be withdrawn from those serving paroles that predate today's decision. It is sufficient to conclude, as we do, that

---

[3]Defendant did not address the issue of retroactive application in his brief on the merits in this court, though it was included in an amicus curiae brief.

even if suspicionless searches in such prior-parole cases remain illegal in the abstract, the evidence they produce need not be excluded from subsequent criminal proceedings. Our reasons for reaching this result are several.

In the first place, we consider it significant that decisions narrowing Fourth Amendment rights have consistently been given full retroactive effect. (E.g., *United States* v. *Estrada* (9th Cir. 1984) 733 F.2d 683, 684-685 [holding that *Illinois* v. *Gates* (1983) 462 U.S. 213 [103 S.Ct. 2317, 76 L.Ed.2d 527], relaxing prior test for validity of informant's tip to establish probable cause, is retroactive]; *United States* v. *Burns* (2d Cir. 1982) 684 F.2d 1066, 1074 [holding that *United States* v. *Ross* (1982) 456 U.S. 798 [102 S.Ct. 2157, 72 L.Ed.2d 572] and *New York* v. *Belton* (1981) 453 U.S. 454 [101 S.Ct. 2860, 69 L.Ed.2d 768], narrowing restrictions on warrantless searches of closed containers in automobiles, are retroactive].)[4] Indeed, in *Griffith* v. *Kentucky* (1987) 479 U.S. 314 [107 S.Ct. 708, 93 L.Ed.2d 649] (*Griffith*), the high court held that all new constitutional rules of criminal procedure are fully retroactive to cases not yet final, even when they represent a "clear break" with the past. (*Id.* at p. 328 [107 S.Ct. at p. 716].) While *Griffith* was concerned with a new rule expanding the rights of criminal defendants, at least two Ninth Circuit decisions have held that *Griffith* equally compels retroactivity when Fourth Amendment rights are narrowed. (*U.S.* v. *Santamaria-Hernandez* (9th Cir. 1992) 968 F.2d 980, 983 [holding that *California* v. *Hodari D.* (1991) 499 U.S. 621 [111 S.Ct. 1547, 113 L.Ed.2d 690], inconsistent with Ninth Circuit precedent that "seizure" occurs prior to capture following police chase, is retroactive]; *U.S.* v. *Sanchez* (9th Cir. 1991) 944 F.2d 497, 499 [holding that *California* v. *Acevedo* (1991) 500 U.S. 565 [111 S.Ct. 1982, 114 L.Ed.2d 619], overruling "closed container" exception to "automobile exception," is retroactive].)

Moreover, the exclusionary rule, a nonconstitutional "prudential" measure designed to deter illegal police conduct, has been held not to apply to a number of situations regardless of whether the underlying search itself was unconstitutional. (E.g., *Pennsylvania Bd. of Probation and Parole* v. *Scott, supra,* 523 U.S. __ [118 S.Ct. 2014, 141 L.Ed.2d 344] [parole revocation hearing]; *United States* v. *Leon* (1984) 468 U.S. 897 [104 S.Ct. 3405, 82 L.Ed.2d 677] (*Leon*) [good faith reliance on invalid warrant].) As the high court has explained, exclusion of evidence cannot cure an already complete invasion of constitutional rights, and the sanction is thus intended to discourage future misconduct. It therefore "applies only in contexts 'where its

[4]As the high court noted in *United States* v. *Ross, supra,* 456 U.S. 798, no legitimate reliance interest is thereby frustrated (*id.* at p. 824 [102 S.Ct. at p. 2172]), because "[a]ny interest in maintaining the status quo that might be asserted by persons who may have [structured their illegal activities] on the basis of judicial precedents clearly would not be legitimate" (*id.* at fn. 33).

remedial objectives are thought most efficaciously served,' [citations]" and where "its deterrence benefits outweigh its 'substantial social costs.' [Citation.]" (*Pennsylvania Bd. of Probation and Parole* v. *Scott, supra*, 523 U.S. at p. ___ [118 S.Ct. at p. 2019].)

In light of these principles, both federal and California cases have held that when judicial decisions narrow the exclusionary rule itself, the new ruling is fully retroactive. (E.g., *People* v. *MacAvoy* (1984) 162 Cal.App.3d 746, 759-760 [209 Cal.Rptr. 34] [*Leon* rule is retroactive]; *People* v. *Helmquist* (1984) 161 Cal.App.3d 609, 615-616 [207 Cal.Rptr. 718] [same]; *United States* v. *Cassity* (6th Cir. 1986) 807 F.2d 509, 511 [same].) The rationale is that insofar as the exclusionary rule will not apply to future cases in any event, no substantial deterrent benefit is gained by applying it to conduct already completed. (See 5 LaFave, Search and Seizure (3d ed. 1996) § 11.5(d), p. 358.)

That rationale is applicable here. No deterrent effect is achieved by excluding evidence from past searches, on grounds they were illegal, when such searches will be legal, and thus not an appropriate subject of deterrence, in future cases. Moreover, a refusal to apply the exclusionary rule in a subsequent criminal proceeding does not violate due process or ex post facto principles, because a rule permitting the introduction of competent and relevant evidence does not criminalize conduct that was innocent when committed, exacerbate the punishment for a prior crime, or eliminate a defense thereto. (See *Collins, supra*, 497 U.S. 37, 42-52 [110 S.Ct. 2715, 2719-2724].)

We therefore hold that evidence gleaned from the search of this defendant's residence, and from other searches conducted under the auspices of standard search conditions in paroles which predate today's decision, need not be excluded from evidence in subsequent criminal proceedings on grounds that the searches were undertaken without reasonable suspicion. Insofar as it concluded that defendant's motion to suppress evidence should have been granted on that basis, the Court of Appeal therefore erred.

CONCLUSION

The judgment of the Court of Appeal is reversed. To the extent it is inconsistent with this opinion, *Burgener* is disapproved.

George, C. J., Baxter, J., and Chin, J., concurred.

**KENNARD, J.,** Concurring and Dissenting.—Twelve years ago, this court unanimously held that a warrantless search of a parolee is permissible only if

there is a "reasonable suspicion" that the parolee has committed a crime or has violated the terms of parole. (*People* v. *Burgener* (1986) 41 Cal.3d 505 [224 Cal.Rptr. 112, 714 P.2d 1251] (*Burgener*).) This standard has been adopted by the vast majority of jurisdictions that have considered the issue. Today the majority, without pausing to consider whether the search here satisfied this test, unnecessarily reaches out to overturn the "reasonable suspicion" standard, instead permitting the suspicionless search of parolees.

Because the majority has put forth no persuasive reasons for upsetting the balance that this court in *Burgener, supra,* 41 Cal.3d 505, so carefully struck between the competing interests of the government and of the individual, I would continue to adhere to the reasonable suspicion standard this court established in *Burgener.* Here that test was satisfied, for defendant's parole agent had a reasonable suspicion that defendant was engaged in criminal behavior when the agent authorized police officers to search defendant's property. For this reason only, I agree with the majority that the search was lawful and I concur in the judgment.

I

As a condition of parole, defendant, his residence, and any property under his control could be "searched without a warrant by an agent of the Department of Corrections or any law enforcement officer." On February 23, 1995, an anonymous informant telephoned the office of defendant's parole agent, Gordon McClaskey, and gave this information: defendant was using "crank" (methamphetamine), he had lost his job because his employer suspected him of stealing, he had falsely reported to the police that his VCR (videocassette recorder) had been stolen in a burglary, and his wife had left him because he had "threatened to use a gun on her." The caller said the source of this information was a drug user named "Shirley." At the time, defendant was living in Woodlake, a small town in Tulare County, California.

Parole Agent McClaskey called the Woodlake Police Department and verified the informant's statement that defendant had reported a burglary of his home. McClaskey also made this request: "[I]f . . . or when you see this guy check him out for being under the influence [of drugs]."

That evening, Woodlake Police Officer Justin Beal, who had been told of Parole Agent McClaskey's request, was driving by defendant's home when he saw defendant walk out of a shed in the backyard. After radioing for assistance, Beal "began to evaluate" defendant to determine whether he was under the influence of any drug and concluded that he was not. Beal then asked Officer Jay Brock, who by then had arrived at the scene, to

telephone Parole Agent McClaskey for permission to search defendant's property. After obtaining McClaskey's authorization, Officer Brock entered defendant's shed, where he found a piece of tinfoil containing .9 grams of methamphetamine.

Defendant was charged with possession of methamphetamine. (Health & Saf. Code, § 11377, subd. (a).) He moved to suppress the methamphetamine seized from the shed, asserting it was obtained through an illegal search. The trial court denied the motion. Defendant pled guilty to the crime charged. He appealed, arguing that the trial court should have granted his suppression motion. The Court of Appeal agreed. Citing *Burgener, supra*, 41 Cal.3d 505, the court concluded that Parole Agent McClaskey, when he authorized Officer Brock to search defendant's property, lacked a "reasonable suspicion" that defendant had committed a crime or had violated the conditions of parole.

## II

California law requires that every prisoner, after completing a prison term, be released on parole unless "the parole authority for good cause waives parole." (Pen. Code, § 3000, subd. (b)(1).) The various conditions of parole include the requirement that the parolee submit to warrantless searches by law enforcement authorities.

In *Burgener, supra*, 41 Cal.3d 505, the defendant's parole officer authorized police officers to search the defendant's apartment, where they found evidence that he had committed a murder. This court rejected the defendant's challenge to the legality of the search condition, holding that a warrantless search of a parolee is proper when based upon reasonable suspicion. Parole searches, we said, are a type of administrative search and therefore " 'subject to the broad reasonableness requirement of the Fourth Amendment [to the federal Constitution].' " (*Burgener, supra*, 41 Cal.3d at p. 534.) We explained: " 'The determination of the standard of reasonableness governing any specific class of searches requires "balancing the need to search against the invasion which the search entails." ' " (*Ibid.*, quoting from *New Jersey* v. *T.L.O.* (1985) 469 U.S. 325, 337 [105 S.Ct. 733, 740, 83 L.Ed.2d 720].)

On one side of the balance are the state's substantial interests in conducting parole searches: " 'The State has found the parolee guilty of a crime against the people. That finding justifies imposing extensive restrictions on the individual's liberty. . . . [W]ith many prisoners there is a risk that they will not be able to live in society without committing additional antisocial acts.' " (*Burgener, supra*, 41 Cal.3d at p. 531, quoting *Morrissey* v. *Brewer*

(1972) 408 U.S. 471, 483 [92 S.Ct. 2593, 2601, 33 L.Ed.2d 484].) The interest in ensuring public safety, this court observed, "permits restrictions on parolees' liberty and privacy interests." (*Burgener, supra*, 41 Cal.3d at p. 532.)

On the other side of the balance are the substantial privacy interests of those affected by parole searches: "The United States Supreme Court has . . . recognized that 'the liberty of a parolee . . . includes many of the core values of unqualified liberty,' and that his 'condition is very different from that of confinement in a prison.'" (*Burgener, supra*, 41 Cal.3d at p. 530, quoting *Morrissey* v. *Brewer, supra*, 408 U.S. at p. 482 [92 S.Ct. at pp. 2600-2601].) The *Burgener* court observed that a parolee's expectation of privacy "is not diminished by the surveillance which is a concomitant of confinement in prison." (*Burgener, supra*, at p. 530.)

The court in *Burgener* went on to say: "Inasmuch as authority to search the residence of a parolee extends to areas which are jointly controlled with other occupants of the residence [citations], the authority to search these premises necessarily portends a massive intrusion on the privacy interests of third persons solely because they reside with a parolee. [Citation.] A parole search must therefore be directly and closely related to parole supervision in order to avoid unreasonable invasion of the privacy interests of the parolee and those with whom he resides." (*Burgener, supra*, 41 Cal.3d at pp. 533-534.)

After carefully balancing the competing interests at stake, this court in *Burgener* upheld the validity of a warrantless search of a parolee if the parole officer has "a reasonable suspicion . . . that the parolee is again involved in criminal activity, or has otherwise violated his parole, and that the search may turn up evidence of that activity, or that evidence of a proposed future violation by the parolee will be uncovered." (*Burgener, supra*, 41 Cal.3d. at p. 535.)

III

The United States Supreme Court has never held that the Fourth Amendment to the federal Constitution permits warrantless, nonconsensual government searches of private residences without at least reasonable suspicion. And that court has never addressed whether the Fourth Amendment permits warrantless, suspicionless searches of parolees. The closest it has come to considering this issue is its decision in *Griffin* v. *Wisconsin* (1987) 483 U.S. 868 [107 S.Ct. 3164, 97 L.Ed.2d 709]. There a probationer was subject to a search condition allowing the probation officer to conduct a warrantless

search of the probationer's home based on "reasonable cause" to believe he possessed contraband. The high court rejected the probationer's contention that, by permitting a search without a warrant and without probable cause, the search condition violated the Fourth Amendment. (483 U.S. at pp. 873-878 [107 S.Ct. at pp. 3168-3171].) As this court had done earlier in *Burgener, supra*, 41 Cal.3d 505, the high court in *Griffin* balanced the state's needs against those of the individual, holding that the government's "special needs" in operating a probation system justified warrantless probation searches that are based only on reasonable rather than probable cause. (*Griffin* v. *Wisconsin, supra*, at p. 873 [107 S.Ct. at p. 3168]; see also *Skinner* v. *Railway Labor Executives' Assn.* (1989) 489 U.S. 602, 619 [109 S.Ct. 1402, 1414, 103 L.Ed.2d 639] [stating that in *Griffin* the court "balance[d] the governmental and privacy interests to assess the` practicality of the warrant and probable-cause requirements"].) The *Griffin* court was not called upon to decide whether a probation search can be conducted on less than reasonable suspicion.[1]

Applying the balancing test that the high court articulated in *Griffin* v. *Wisconsin, supra*, 433 U.S. 868, most state courts that have considered the legality of parole searches have adopted a reasonable suspicion standard. Just last year the Pennsylvania Supreme Court held that under the Fourth Amendment a parolee's search condition can be invoked only "if the totality of the evidence demonstrates: (1) that the parole officer had a reasonable suspicion that the parolee had committed a parole violation, and (2) that the search was reasonably related to the parole officer's duty." (*Com.* v. *Williams* (1997) 547 Pa. 577 [692 A.2d 1031, 1036].) In accord are these decisions from other states: *State* v. *Massey* (1996) 81 Wn.App. 198 [913 P.2d 424, 425]; *People* v. *Woods* (1995) 211 Mich.App. 314 [535 N.W.2d 259, 261-262]; *State* ex rel. *Corgan* v. *King, supra*, 868 P.2d 743, 746 ("The

---

[1]At issue in *Griffin* v. *Wisconsin, supra*, 483 U.S. 868, was the legality of a *probation* search condition, while this case concerns a *parole* search condition. Most courts in other jurisdictions have found no significant differences, for purposes of the Fourth Amendment, between search conditions imposed as a condition of probation and those imposed as a condition of parole. (See, e.g., *U.S.* v. *Hill* (3d Cir. 1992) 967 F.2d 902, 909; *U.S.* v. *Davis* (9th Cir. 1991) 932 F.2d 752, 758; *State* ex rel. *Corgan* v. *King* (Okla.Crim.App. 1994) 868 P.2d 743, 746, fn. 3.) But in *People* v. *Bravo* (1987) 43 Cal.3d 600, 608 [238 Cal.Rptr. 282, 738 P.2d 336], this court drew a distinction between parolees and probationers who are subject to search conditions: "A probationer, unlike a parolee, consents to the waiver of his Fourth Amendment rights in exchange for the opportunity to avoid service of a state prison term. Probation is not a right, but a privilege." Based on its conclusion that probationers who accept search conditions have voluntarily waived their Fourth Amendment rights, *Bravo* held that a court considering the validity of such a condition need not balance the probationer's privacy interests against the government's interests in public safety. (*Ibid.*) I agree with the court in *Bravo* that parolees do not voluntarily consent to search conditions imposed on them; whether *Bravo* correctly held that probationers give such consent is not before us, and I therefore do not address it.

majority of states that have addressed this issue . . . afford Fourth Amendment protection for parolees by requiring reasonable grounds to exist in order for a warrantless search to be valid. [Citations.] [¶] We agree that the Fourth Amendment contains a reasonableness standard for parole searches . . . ."); *People* v. *Slusher* (Colo.Ct.App. 1992) 844 P.2d 1222, 1225 (A parole officer must have "reasonable grounds to believe that a parole violation has occurred."); *Pena* v. *State* (Wyo. 1990) 792 P.2d 1352, 1357-1358; *Allan* v. *State* (Nev. 1987) 746 P.2d, 138, 140 ("A parole officer must have reasonable grounds to believe a violation of a parole agreement has occurred to justify a warrantless search."); and *State* v. *Johnson* (Utah 1987) 748 P.2d 1069, 1072. (See also *Com.* v. *LaFrance* (1988) 402 Mass. 789, 793 [525 N.E.2d 379, 381-382] ["It appears doubtful that any standard below reasonable grounds or reasonable suspicion would meet Fourth Amendment requirements" for probation search]; *State* v. *Fields* (1984) 67 Hawaii 268 [686 P.2d 1379, 1390] [reasonable suspicion required for invocation of probation search condition].)[2]

In three other states, statutes or administrative regulations authorize parole officers to search only on reasonable suspicion. (*State* v. *West* (1994) 185 Wis.2d 68, fn. 2 [517 N.W.2d 482, 484] [Wisconsin Administrative Code permits parole searches only on "reasonable grounds" to believe contraband is present]; *State* v. *Boston* (1994) 269 Mont. 300 [889 P.2d 814, 817] [Montana statute permits parole searches only on reasonable suspicion]; *State* v. *Ashley* (S.D. 1990) 459 N.W.2d 828, 830 [South Dakota parole agreement permitted search "whenever reasonable cause is ascertained by a parole agent"]; see also *People* v. *Eiland* (1991) 217 Ill.App.3d 250 [160 Ill.Dec. 231, 576 N.E.2d 1185, 1191] [Illinois statute permits probation search only on reasonable cause].)

Applying a slightly different analysis, some courts have held that under the Fourth Amendment a parole search "may not be used as a 'subterfuge for a criminal investigation,' " which occurs when "a parole . . . officer conducts a parole . . . search on prior request of and in concert with law enforcement officers." (*U.S.* v. *Richardson* (9th Cir. 1988) 849 F.2d 439, 441.) Most of the federal appellate courts have adopted such a rule. (*U.S.* v. *McFarland* (8th Cir. 1997) 116 F.3d 316, 318; *U.S.* v. *McCarty* (10th Cir. 1996) 82 F.3d 943, 947; *U.S.* v. *Coleman* (7th Cir. 1994) 22 F.3d 126, 129; *U.S.* v. *Hill, supra,* 967 F.2d 902, 910-911; *U.S.* v. *Giannetta* (1st Cir. 1990) 909 F.2d 571, 581; *Owens* v. *Kelley* (11th Cir. 1982) 681 F.2d 1362, 1369;

---

[2]Indeed, the Iowa Supreme Court has held that except for the admissibility of evidence at a parole revocation hearing, "an Iowa State parolee's Fourth Amendment rights . . . [must] be accorded the same recognition as any other person." (*State* v. *Cullison* (Iowa 1970) 173 N.W.2d 533, 537.)

see also *U.S.* v. *Martin* (6th Cir. 1994) 25 F.3d 293, 296 [applying same standard to probation searches].) Several state courts have imposed a similar limitation. (*State* v. *Zeta Chi Fraternity* (1997) 142 N.H. 16 [696 A.2d 530, 542]; *Com.* v. *Pickron* (1993) 535 Pa. 241 [634 A.2d 1093, 1097]; *State* v. *Johnson, supra,* 748 P.2d 1069, 1072; *State* v. *Flakes* (1987) 140 Wis.2d 411 [410 N.W.2d 614, 620]; *State* ex rel. *Corgan* v. *King, supra,* 868 P.2d at p. 747; *People* v. *Candelaria* (1978) 63 A.D.2d 85 [406 N.Y.S.2d 783, 786]; *People* v. *Slusher, supra,* 844 P.2d at p. 1226; see also *State* v. *Smith* (1992) 117 Or.App. 473 [844 P.2d 276] [under state law, probation search conditions can authorize searches only by probation officers, not by police].)

To summarize, state and federal courts that have considered the validity of parole or probation searches have generally adopted either a reasonable suspicion requirement, as this court did in *Burgener, supra,* 41 Cal.3d 505, or a rule barring searches when the parole or probation officer was acting as an agent of the police, or they have adopted both rules. Against this considerable weight of authority imposing some limitations on warrantless searches of parolees, the majority here instead permits virtually unrestricted searches of parolees, with the equivocal caveat that such searches " 'could' " be illegal if the searching officer engages in " 'arbitrary or oppressive conduct.' " (Maj. opn., *ante,* at pp. 753-754.)

In concluding that Officer Brock, acting on Parole Agent McClaskey's authorization, could conduct a warrantless search without a reasonable suspicion that defendant had violated the terms of his parole, the majority relies on three cases. Two are from other jurisdictions (*State* v. *Zeta Chi Fraternity, supra,* 696 A.2d 530 (*Zeta Chi*) and *Owens* v. *Kelley, supra,* 681 F.2d 1362) and one is from this court (*In re Tyrell J.* (1994) 8 Cal.4th 68 [32 Cal.Rptr.2d 33, 876 P.2d 519]). None of these cases provide persuasive support for the majority's holding.

In *Zeta Chi,* a college fraternity (a New Hampshire corporation) was convicted of prostitution and selling alcohol to persons under the age of 21. As a condition of probation, the trial court ordered the fraternity to submit to unannounced random searches of its premises for alcohol and for any other violations of the terms of probation. The New Hampshire Supreme Court upheld the legality of the search condition because it was "reasonably related to the supervision and rehabilitation of the probationer . . . ." (*Zeta Chi, supra,* 696 A.2d at p. 540.)

In *Zeta Chi,* the search condition was based on a showing of particularized need to conduct random searches, in light of the trial court's finding that the defendant corporation had "plotted to circumvent the underage drinking laws

and avoid detection by law enforcement." (*Zeta Chi, supra*, 696 A.2d at p. 539.) Here, by contrast, the search condition is a *blanket* search condition, imposed indiscriminately on all parolees. (See Cal. Code Regs., tit. 15, § 3901.9.2.) Nothing in *Zeta Chi* supports the majority's holding that the state may impose suspicionless search conditions on *all parolees*. Moreover, the court in *Zeta Chi* placed a significant limit on the power of probation officers generally to invoke a probationer's search condition, allowing them to do so only when not acting as an agent of the police, rather than for purposes related to probation. (*Zeta Chi, supra*, 696 A.2d at pp. 541-542.) As I discussed earlier, at pages 761-762, *ante*, most federal appellate courts, and some state courts as well, have a similar rule.

In *Owens* v. *Kelley, supra*, 681 F.2d 1362, the second case on which the majority relies, a defendant convicted of two violations of the Georgia Controlled Substances Act was placed on probation on the condition, among others, that he submit to warrantless searches without reasonable suspicion. The federal appellate court rejected the defendant's contention that this condition violated his Fourth Amendment rights. It concluded that searches without reasonable suspicion would "dissuade [the defendant] from possessing illegal drugs by making him cognizant that unlawful possession can be discovered at any time" and would promote the defendant's rehabilitation "by providing probation supervisors with a practical mechanism to determine whether rehabilitation is indeed taking place." (*Id.* at p. 1367, fns. omitted.)

As in *Zeta Chi, supra*, 696 A.2d 530, the court in *Owens* v. *Kelley, supra*, 681 F.2d 1362, was concerned only with the legality of a search condition imposed as a matter of discretion upon a showing of particularized need in an individual case, unlike the blanket search condition in this case that is imposed indiscriminately against all parolees. And as in *Zeta Chi*, the *Owens* court stressed that searches pursuant to search conditions in general are lawful only "so long as they are in fact conducted for probationary purposes" and are not " 'a subterfuge for criminal investigations.' " (*Owens* v. *Kelly, supra*, 681 F.2d at p. 1369.) Therefore, like *Zeta Chi*, *Owens* is distinguishable from this case.

In *In re Tyrell J., supra*, 8 Cal.4th 68, the third case on which the majority relies, a majority of this court held that when a police officer conducts an otherwise illegal search of a minor, the search is constitutionally permissible if the minor was subject to a probation search condition of which the searching officer was unaware. But the *Tyrell J.* majority made this assertion without any reasons or supporting analysis, "[a]lmost as an afterthought," as I pointed out in my dissent. (*Id.* at p. 98 (dis. opn. of Kennard, J.).) Thus,

*Tyrell J.* offers no support for the majority's abandonment of *Burgener*'s reasonable suspicion standard.[3]

CONCLUSION

In *Burgener*, this court observed: " '[I]n most cases the life of a parolee more nearly resembles that of an ordinary citizen than that of a prisoner. The parolee is not incarcerated; he is not subjected to a prison regimen, to the rigors of prison life and the unavoidable company of sociopaths. . . . The parolee lives among people who are free to come and go when and as they wish. Except for the conditions of parole, he is one of them.' " (*Burgener, supra,* 41 Cal.3d at p. 530.) The United States Supreme Court too has recognized that "the liberty of a parolee . . . includes many of the core values of unqualified liberty," thus making the parolee's condition "very different from that of confinement in a prison." (*Morrissey* v. *Brewer, supra,* 408 U.S. at p. 482 [92 S.Ct. at p. 2601], fn. omitted.)

The purpose of parole is to monitor and assist those who have completed prison sentences as they make the transition from regimented prison life to free society. (See *Morrissey* v. *Brewer, supra,* 408 U.S. at pp. 477-478 [92 S.Ct. at pp. 2598-2599].) To accomplish this purpose, the parolee is granted a conditional liberty that is significantly less than that of an ordinary free adult but substantially greater than that of a prison inmate. (*Id.* at pp. 481-482 [92 S.Ct. at pp. 2600-2601].) The legitimate scope of the parolee's privacy expectations are consistent with this intermediate status, which should determine the standard by which the validity of parole searches are judged.

Just as the parolee possesses a qualified liberty that is partway between that of a free adult and that of a prisoner serving a sentence within prison walls, so also the standard for judicial review appropriate for parole searches is one that lies between, on the one hand, the probable cause standard ordinarily used to determine the constitutional validity of most law enforcement searches (see *Whren* v. *United States* (1996) 517 U.S. 806, 818 [116

[3]In this case, however, the trial court correctly found that the search of defendant's property was based on reasonable suspicion that defendant had violated his parole. As I explained previously, Parole Agent McClaskey received a report from an anonymous informant that defendant had violated the terms of parole by using methamphetamine and by falsely reporting to the Woodlake Police Department that his house had been burglarized. This information gave rise to a reasonable suspicion that defendant might be violating the terms of parole, particularly when McClaskey verified that defendant had indeed reported a burglary to the police. Thus, the search of defendant's property did not violate the Fourth Amendment. I therefore concur with the majority in reversing the decision of the Court of Appeal, which held that the trial court should have granted defendant's motion to suppress the evidence seized during the search of defendant's shed.

S.Ct. 1769, 1776-1777, 135 L.Ed.2d 89]) and, on the other hand, the virtually complete absence of constitutional restraints on searches of prisoners conducted by prison authorities within prison walls (see *Hudson* v. *Palmer* (1984) 468 U.S. 517, 527-530 [104 S.Ct. 3194, 3200-3202, 82 L.Ed.2d 393] [federal Constitution does not prohibit random searches of prison cells unless searches constitute calculated harassment unrelated to prison needs]). The reasonable suspicion standard that this court adopted in *Burgener, supra,* 41 Cal.3d 505, is such an appropriate intermediate standard and one I would retain. Today, by permitting suspicionless searches of all parolees unless shown to be arbitrary or oppressive, the majority casts this intermediate standard aside, replacing it with a rule that is virtually indistinguishable from the standard for in-prison searches.

As a consequence of today's decision by the majority, government officials may now search private homes in neighborhoods throughout the state, by day or by night, for any reason or for no reason, if one of the home's residents is a parolee subject to a search condition. As the United States Supreme Court has stressed, "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." (*United States* v. *United States District Court* (1972) 407 U.S. 297, 313 [92 S.Ct. 2125, 2134, 32 L.Ed.2d 752].) By requiring reasonable suspicion for parole searches, the court in *Burgener, supra,* 41 Cal.3d 505, protected the privacy of the home while at the same time recognizing the government's substantial interest in supervising parolees. I decline to join the majority in adopting a rule that recognizes no distinction between a private home occupied by a parolee and a prison cell, and that authorizes warrantless, suspicionless searches of private homes.

MOSK, J., concurred.

**WERDEGAR, J.,** Concurring and Dissenting.—I generally agree with the sentiments expressed in Justice Kennard's concurring and dissenting opinion. Almost 13 years ago, this court addressed the question of what quantum of evidence law enforcement officers must possess when seeking to invoke a parole search condition of an adult parolee. (*People* v. *Burgener* (1986) 41 Cal.3d 505 [224 Cal.Rptr. 112, 714 P.2d 1251] (*Burgener*).) To resolve the issue, *Burgener* carefully balanced two important factors. On the one hand, society has a strong need, based on its duty to protect the public, to determine whether one granted conditional liberty following a period of incarceration is complying with the terms of parole. On the other hand, an adult parolee, attempting the often difficult reintegration into society, retains a degree of privacy that, while less than that of nonparolees, is nevertheless greater than that of persons still physically confined in prison. (*Id.* at pp.

533-534.) After balancing these factors, *Burgener* held that neither a search warrant nor probable cause was required under the Fourth Amendment. A parole officer, however, must possess a *reasonable suspicion* the parolee had reoffended or otherwise violated the terms of his or her parole before invoking the search condition and conducting a warrantless search of the person or property of an adult parolee.

Today, the majority dispenses with even this minimal protection of an adult parolee's privacy. For the reasons stated in Justice Kennard's separate opinion, I cannot agree with the majority's reasoning. I write separately to emphasize two points. First, principles of judicial restraint counsel against reaching out and overruling *Burgener, supra*, 41 Cal.3d 505, as the parole officer in this case clearly possessed a reasonable suspicion defendant was in violation of the terms and conditions of his parole. Second, the majority's reliance on *In re Tyrell J.* (1994) 8 Cal.4th 68 [32 Cal.Rptr.2d 33, 876 P.2d 519] (*Tyrell J.*), and extension of the rationale in that case to the adult parolee context, is mistaken.

## I

Parole Agent Gordon McClaskey received an anonymous telephone call in which the caller reported defendant was using methamphetamine, a violation of the terms and conditions of his parole. The tipster also stated defendant had falsely reported a burglary to police. McClaskey was able to verify that defendant indeed had reported a burglary of his home. McClaskey concluded there was a reasonable suspicion defendant was violating his parole and so informed Officer Jay Brock, who proceeded to invoke defendant's search condition and search a shed on defendant's property, finding methamphetamine.

The trial court found this search was based on a reasonable suspicion defendant was violating the conditions of his parole and thus denied defendant's suppression motion. I agree. A suspicion of wrongdoing that is "reasonable" describes a degree of certainty much less than that needed to establish probable cause, the standard needed to obtain a search warrant. (*Burgener, supra*, 41 Cal.3d at p. 534.) Although a reasonable suspicion "must . . . be based on articulable facts" and "rational inferences from those facts" (*id.* at p. 535), the lower threshold of certainty is justified by the state's interest in monitoring the progress of the parolee. The anonymous telephone call to Agent McClaskey, coupled with the partially verified information about the burglary report, adequately supplied a reasonable suspicion that defendant was once again engaged in criminal activity.

Because there was reasonable cause supporting the decision to search defendant's property, it is unnecessary in this case to address whether

Officer Brock's search of the shed *would have been* legally justified had McClaskey lacked reasonable cause to search. (Conc. and dis. opn. of Kennard, J., *ante*, at p. 764, fn. 3.) " '[W]e do not reach constitutional questions unless absolutely required to do so to dispose of the matter before us.' (*People* v. *Williams* [(1976)] 16 Cal.3d 663, 667 [128 Cal.Rptr. 888, 547 P.2d 1000]; [citations].) As the United States Supreme Court reiterated, 'A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them.' (*Lyng* v. *Northwest Indian Cemetery Prot. Assn.* (1988) 485 U.S. 439, 445 . . . .)" (*Santa Clara County Local Transportation Authority* v. *Guardino* (1995) 11 Cal.4th 220, 230-231 [45 Cal.Rptr.2d 207, 902 P.2d 225].) As I noted in *People* v. *Bennett* (1998) 17 Cal.4th 373 [70 Cal.Rptr.2d 850, 949 P.2d 947], "[p]rinciples of judicial restraint counsel that we not reach out to decide gratuitously constitutional questions of first impression. Sound jurisprudence dictates that such issues be decided only in the context of cases and controversies actually raising the issue." (*Id.* at p. 393 (conc. opn. of Werdegar, J.); see also *People* v. *Birks* (1998) 19 Cal.4th 108, 139 [77 Cal.Rptr.2d 848, 960 P.2d 1073] (conc. opn. of Werdegar, J.).) I note the United States Supreme Court recently found it unnecessary to decide "whether a search of a parolee's residence must be based on reasonable suspicion where the parolee has consented to searches as a condition of parole." (*Pennsylvania Bd. of Probation and Parole* v. *Scott* (1998) 523 U.S. __, __, fn. 3 [118 S.Ct. 2014, 2019, 141 L.Ed.2d 344, 351].)

Accordingly, I disagree that we should even address whether a reasonable suspicion is a prerequisite to invoking an adult parolee's search condition. In any event, because the search here was supported by a reasonable suspicion that defendant was violating the terms of his parole, I concur in the majority's decision to reverse the judgment of the Court of Appeal. (See conc. and dis. opn. of Kennard, J., *ante*, at p. 764, fn. 3.)

II

Even were I to agree the issue was properly before this court, I disagree with the majority's unjustified abandonment of the rule set forth in *Burgener, supra,* 41 Cal.3d 505. *Tyrell J., supra,* 8 Cal.4th 68, on which the majority places primary reliance, involved a distinguishable situation, as even the *Tyrell J.* court apparently understood, having cited *Burgener* without giving the slightest hint that it was intending to overrule that precedent. (*Tyrell J., supra,* at p. 78 [citing *Burgener* in distinguishing adult *probation* search conditions from adult *parole* search conditions].)

Despite *Tyrell J.*'s tacit endorsement of *Burgener*, the majority reasons that in *Tyrell J.*, this court took a step back from the *Burgener* focus on the

justification for the government intrusion, instead focusing on the fact that a juvenile probationer lacks a reasonable expectation of privacy. (Maj. opn., *ante*, at p. 750.)

The majority mischaracterizes *Burgener*. That case discussed in some depth the reasonableness of an adult parolee's expectation of privacy, explaining that "[an adult parolee's] expectation of privacy is not diminished by the surveillance which is a concomitant of confinement in prison. As one commentator has observed: '[I]n most cases the life of a parolee more nearly resembles that of an ordinary citizen than that of a prisoner. The parolee is not incarcerated; he is not subjected to a prison regimen, to the rigors of prison life and the unavoidable company of sociopaths. . . . The parolee lives among people who are free to come and go when and as they wish. Except for the conditions of parole, he is one of them.' (Note (1969) 22 Stan.L.Rev. 129, 133; see also White, *The Fourth Amendment Rights of Parolees and Probationers* (1969) 31 U. Pitt. L.Rev. 167, 177.) The United States Supreme Court has itself recognized that 'the liberty of a parolee . . . includes many of the core values of unqualified liberty,' and that his 'condition is very different from that of confinement in a prison.' (*Morrissey v. Brewer* (1972) 408 U.S. 471, 482 . . . .)" (*Burgener, supra*, 41 Cal.3d at p. 530.)

We also noted in *Burgener* that "[t]o say that a parolee is subject to warrantless search is not to say that his privacy interest is so diminished that random searches or searches unrelated to a proper parole supervision purpose are reasonable and constitutionally permissible." (*Burgener, supra*, 41 Cal.3d at p. 533.) Contrary, then, to the majority's characterization of that case, *Burgener* considered fully the degree to which an adult parolee's expectation of privacy was reasonable.

The majority also opines that in *Tyrell J.*, we struck a new balance—one that acknowledges the "level of intrusion is de minimis and the expectation of privacy greatly reduced when the subject of the search is on notice that his activities are being routinely and closely monitored." (Maj. opn., *ante*, at p. 753.) The balance struck in that case, however, was for juvenile probationers, not adult parolees. The majority opinion does not adequately explain why, 12 years ago in *Burgener*, adult parolees enjoyed a greater degree of privacy than they do today.

The conditional liberty granted a minor who has committed a crime implicates different concerns from those of an adult attempting reintegration into society following a period of incarceration in state prison. The purposes and goals of juvenile proceedings are manifestly different from criminal

proceedings involving adults. "[A]lthough we have recently witnessed increased formalization of certain procedural aspects of the juvenile system [citations], and although the character of our adult penal structure may be evolving in any of a variety of directions, the fact remains that the juvenile system is fundamentally different from the adult penal system. Non-adversary in substance, the juvenile system is designed to place the state in the status of *in loco parentis*. Its underlying philosophy is that the state assumes a protective role with respect to the juveniles over whom it gains jurisdiction. [¶] . . . California decisions reflect the view that juvenile court proceedings are in the nature of guardianship proceedings [citations] and are concerned primarily with the welfare of the juvenile. [Citations.] They also instruct that adjudications of juvenile wrongdoing are not 'criminal convictions' [citation] and that the commitment of a ward to the Youth Authority is not a 'sentence.'" (*Leroy T. v. Workmen's Comp. Appeals Bd.* (1974) 12 Cal.3d 434, 439 [115 Cal.Rptr. 761, 525 P.2d 665].)

Unlike a prison sentence and subsequent period of parole imposed on the adult offender, "[t]he process of the juvenile court involves determination of the needs of the child and society, provision for guidance and treatment for the juvenile, and protection of the child from punishment and stigma. [¶] In recent years the courts, while preserving the beneficial aspects of the juvenile process, have held that certain procedural protections must be observed in order to guarantee the fundamental fairness of juvenile proceedings. [Citations.] [*In re*] *Gault* [(1967) 387 U.S. 1 [87 S.Ct. 1428, 18 L.Ed.2d 527]], [*In re*] *Winship* [(1970) 397 U.S. 358 [90 S.Ct. 1068, 25 L.Ed.2d 368]] and the other decisions which insure such procedural fairness in juvenile proceedings do not, however, suggest a surrender of the salutary protections of the juvenile court system. As we observed in *In re Dennis M.* [(1969)] 70 Cal.2d 444, 456 [75 Cal.Rptr. 1, 450 P.2d 296], 'even after *Gault*' juvenile court proceedings 'retain a *sui generis* character' and are 'conducted for the protection and benefit of the youth in question.'" (*T.N.G. v. Superior Court* (1971) 4 Cal.3d 767, 775 [94 Cal.Rptr. 813, 484 P.2d 981].)

By contrast, a period of parole placed on an adult is intended "to provide for the supervision of and surveillance of parolees, . . . and to provide educational, vocational, family and personal counseling necessary to assist parolees in the transition between imprisonment and discharge." (Pen. Code, § 3000, subd. (a)(1).) The protective and rehabilitative goals the juvenile court intends to achieve by placing a minor on probation are thus different from the state's goal of smoothing the parolee's transition from a custodial to a noncustodial setting.

As the opinions in both *Burgener, supra,* 41 Cal.3d 505, and *Tyrell J., supra,* 8 Cal.4th 68, recognized, the conditional liberty of a juvenile probationer is distinguishable from that of an adult parolee. Today's decision

conflates the two, reducing the privacy rights of an adult who is attempting to rejoin the law-abiding public and rebuild his or her life, essentially to that of an inmate in prison. (See *Hudson* v. *Palmer* (1984) 468 U.S. 517 [104 S.Ct. 3194, 82 L.Ed.2d 393] [state may search prisoner's cell without a warrant, probable cause or even reasonable cause].) Because the majority fails to persuade me this conclusion is required by the Fourth Amendment to the federal Constitution,[1] or that the reasoning in *Tyrell J.* must be extended to adults, I decline to join its decision to overrule *Burgener.*

## III

Because the parole officer in this case reasonably suspected that defendant was in violation of his parole, I concur in the majority's decision to reverse the judgment of the Court of Appeal. For the reasons stated above, I otherwise respectfully dissent from the balance of the majority opinion.

MOSK, J., concurred.

The petition of appellant Rudolfo Reyes for a rehearing was denied December 2, 1998. Mosk, J., Kennard, J., and Werdegar, J., were of the opinion that the petition should be granted.

---

[1] "Since the passage of Proposition 8 and its amendment of article I, section 28, subdivision (d), of the state Constitution, state and federal claims regarding the admissibility of evidence obtained by an allegedly improper search or seizure 'are reviewed under the same standard.' [Citations.]" (*Tyrell J., supra,* 8 Cal.4th at p. 76.)