Filed 10/4/13  P. v. Lopez CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MARIO ANTONIO LOPEZ,<br><br>    Defendant and Appellant. | A133997<br><br>(Sonoma County Super. Ct.<br>No. CR1001212<br><br>ORDER MODIFYING OPINION AND<br>DENYING PETITION FOR REHEARING |

BY THE COURT;

The opinion filed herein on September 9, 2013, is modified as follows:

(1) On page 2, the final sentence of the first full paragraph is modified to read: "We conclude that none of these contentions has merit, and thus we affirm."

(2) On page 13, the caption is modified to read:  "**The Trial Court Did Not Err In Denying Defendant's *Romero* Motion**."

(3) On page 14, the final sentence of the first full paragraph, and the second full paragraph, are modified to read:  "Defendant is not correct.

"Defendant's 2006 conviction of violating former section 245, subdivision (a)(1) (currently section 245, subdivision (a)(4)) constituted a serious felony for purposes of the Three Strikes law because it was found to have been committed for the benefit of a criminal street gang within the meaning of section 186.22, subdivision (b)(1).  (§ 1192.7, subd. (c)(28); *People v. Briceno* (2004) 34 Cal.4th 451, 456, 459.)  But defendant's objection is not so much legal as factual.  He maintains that it was a term of the 2006 plea

1

bargain that the conviction would not be used as a strike in future prosecutions.  But the written change of plea form, the transcript of the change of plea, and the transcript of defendant's 2006 sentencing were examined by the trial court, whose conclusion was "there was never a mention . . . that it wasn't a serious or violent felony."  Those same sources are in the record on appeal, and our examination corroborates the trial court's statement.  In these circumstances, there is no ambiguity or term of the agreement that works in defendant's favor.  (Cf. *People v. Watts* (2005) 131 Cal.App.4th 589, 596 ["On an appellate challenge to a finding that a prior conviction was a strike, . . . *if it cannot be determined from the record that the offense was committed in a way that would make it a strike*, a reviewing court must presume the offense was not a strike."].)  Thus, there was no error in denying defendant's *Romero* motion."

(3) On page 15, the disposition is modified to read:  "The judgment of conviction is affirmed."

This modification does effect a change in the judgment.

The petition for rehearing is denied.


Dated:                                                    _____
                                                                  Acting P.J.

2

Filed 9/9/13  P. v. Lopez CA1/2 (unmodified version)
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>MARIO ANTONIO LOPEZ,<br><br>        Defendant and Appellant. | A133997<br><br>(Sonoma County<br>Super. Ct. No. SCR581958) |

A jury found defendant Mario Antonio Lopez guilty as charged of being an active member of a criminal street gang (Penal Code, § 186.22, subd. (a)[1]), and being a past-convicted felon in possession of a firearm (former § 12021, subd. (a)(1)[2]).  The jury also found true an allegation that the latter offense was "committed . . . with the specific intent to promote, further, or assist in any criminal conduct by gang members"  (§ 186.22, subd. (b)(1)).  After finding true allegations that defendant had a prior felony conviction for purposes of various enhancing statutes (§§ 667, 667.5, 1170.12), the trial court denied defendant's motion to strike the serious violent felony prior pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, and sentenced him to state prison for an aggregate term of nine years.

---

[1] Subsequent statutory references are to the Penal Code.

[2] Operative January 1, 2012, former section 12021, subdivision (a)(1), was repealed and reenacted without substantive change as section 29800, subdivision (a)(1). (Stats. 2010, ch. 711, § 4 [repealed]; Stats. 2010, ch. 711, § 6 [reenacted].)

1

On this timely appeal, defendant makes numerous and varied claims of error. He first contends that his motion to suppress evidence was erroneously denied on the ground that he lacked standing to contest the search of the residence where the firearm was found. Next, he contends that substantial evidence does not support either of the gang-related penalties, and that substantial evidence is also lacking on the crucial point of his possession of the weapon. Next he argues that the trial court erred when it responded to a question from the jury. Finally, he argues that the trial court abused its discretion when it denied his *Romero* motion to strike his prior felony conviction so that he would not be sentenced in accordance with the Three Strikes law. We conclude that only the last of these contentions has merit, and that the error requires resentencing, but otherwise affirm.

## BACKGROUND

On the afternoon of April 22, 2010, Santa Rosa police conducted a search of a residence at 1690 Dutton Street which they believed defendant might be sharing with his sister. The search was conducted pursuant to the standard search provision applicable to all parolees—and defendant was less than a year out of state prison for a gang-related assault.

Detective Brian Sinigiani, assigned to the gang unit (and the prosecution's expert witness on gangs), knocked at the front door. Defendant answered. The officers, approximately ten in number, entered and began searching the house, which had three bedrooms. One of the bedrooms was for children. One belonged to Jordan Paz, who was also present at the time of the search.[3] Detective Sinigiani described the search of the third bedroom: "It . . . appeared to be occupied by a male, all male clothing inside. There was shirts hanging up in the closet. And a dresser . . . . [¶] . . . [¶] . . . I saw some paper laying on the dresser with . . . Mario Lopez's name on it. Further search I found approximately thirty to forty other pieces of papers or items, personal property belonging

---

[3] Paz was the boyfriend of Angelina Lopez, defendant's sister, who also lived at the address. The house was being rented in the sister's name. Paz was identified by Detective Sinigiani, and by Ms. Lopez, as a member of a different "Norteño set."

2

to Mr. Lopez . . . . [¶] . . . And then there was a bed off to the right and a little nightstand . . . and right next to the nightstand was a larger grouping of paperwork." Inside a drawer of the dresser Sinigiani found an unloaded handgun.[4] All of the "paperwork" had defendant's name on it, and "a large amount" of it was on top of the dresser. Defendant was carrying a key to the front door.

Detective Sinigiani testified that he had seen defendant at this address three times, and had recently talked with defendant on two occasions, one of which occurred when defendant was inside the house. Among the "paperwork" discovered was defendant's Social Security card and his California ID card showing 1690 Dutton Street as his address. A certificate of title issued by the DMV also showed 1690 Dutton Street as defendant's address. So did a Manchester-Point Arena Band of Pomo Indians tribal ID card.

Detective Sinigiani further testified that the Norteño criminal street gang was engaged in various patterns of criminal gang activity: "primarily . . . drug sales and in violent offenses, including robberies of persons, murders and assaults on rival gang members, witness intimidation . . . auto theft," and other "money making opportunities." Detective Sinigiani believed defendant was an active Norteño member. Defendant had a number of what Detective Sinigiani termed "gang tattoos"; they were not "Norteño specific," but "are consistent with gang participation." Among defendant's "paperwork" were letters and envelopes from California and Arizona prison inmates which could indicate that defendant was passing information "from the prison out to streets," and what could be a written code key to disguise gang-related information. Defendant also had the name and CDC number of an incarcerated high ranking Norteño leader, and possession of this information "would be an indication to me of gang participation."

---

[4] The gun was the subject of stipulations read to the jury, that: Charles Russell purchased the weapon in 1994 in North Hollywood. He never lived in Sonoma County, never visited the Dutton Street address, and has "never given anyone permission to possess this firearm." A fingerprint examiner with the Santa Rosa Police Department found no latent prints on the gun.

Moreover, there were several "documented law enforcement contacts" where defendant was involved in gang fights "with other Norteño gang participants," and other times was simply seen with other "other Norteño gang participants." There were photographs of defendant throwing gang signs. All of this was indicative of "an active, continuing ongoing association." Detective Sinigiani testified that "Mr. Lopez's family has a long history of gang associations" dating back to the 1980s. And defendant's brother, uncle, and father are active Norteños.

When asked "Can the possession of a firearm such as People's 1, possession by an active participant in the Norteño criminal street gang, can that constitute a benefit for the gang," Detective Sinigiani answered, "Yes, I believe so." He explained gun possession "boosts your status within the gang" because it can make one a "go-to person" for borrowing it, and because for "gang members out on the street" it is "the ultimate weapon." Sinigiani believed the weapon was under defendant's control in that "he exercised the same control over that firearm as all of his personal . . . items in that room."

The sole witness for the defense, Angelina Lopez, testified that defendant lived at the house from July (after his release from prison) to September of 2009, and thereafter moved in with his wife at an apartment in Santa Rosa. Even after moving, defendant visited often, and his sister gave him full access to the room, and let him store possessions there. She allowed defendant to have mail sent to the apartment. She allowed many other people, including people she knew to be Norteños, to have access to the room and to use it as a storeroom. She testified that neither she, Paz, defendant, nor the other people she let have access to the room brought the gun into the house. In fact, she never saw the gun until the trial. Finally, she admitted that in the past she had "hung out" with Norteños, and that the father of her child is a Norteño.

4

## REVIEW

## Denial Of Defendant's Suppression
## Motion Was Not Error

As a parolee, defendant was statutorily "subject to search or seizure by a probation or parole officer or other peace officer at any time of the day or night, with or without a search warrant or with or without cause." (§ 3067, subd. (b)(3).) As a general principle, so long as the searching officers know the parolee's status prior to conducting the search (*People v. Sanders* (2003) 31 Cal.4th 318, 333), there is no Fourth Amendment problem with a warrantless search of a parolee's person, place, or effects despite the absence of a particularized suspicion of criminality. (*Samson v. California* (2006) 547 U.S. 843, 856; *People v Reyes* (1998) 19 Cal.4th 743, 752-753.) The only exception to this general principle is that the search cannot be "arbitrary and capricious," which means "unrelated to rehabilitative, reformative, or legitimate law enforcement purposes," or harassment "motivated by personal animosity toward the parolee." (*People v. Reyes*, *supra*, at pp. 753-754.)

Defendant moved to suppress all evidence obtained from the search of the Dutton Street house on the ground that it amounted to harassment and was tainted by this improper impulse. After a brief evidentiary hearing, the trial court denied the motion on the dual grounds that defendant lacked standing and there was no evidence of harassment. Defendant presents three arguments to overthrow that denial.

First, he asserts that the trial court erred in concluding he lacked standing to contest the search. However, he mounts no comparable attack on the other ground for the denial. Thus, he is only attacking one of the two grounds for the denial, implicitly conceding that the trial court's order was not incorrect in finding no harassment. Because the order may be upheld solely on this other ground, defendant's standing argument may be treated as moot. (See, e.g., *Transamerica Ins. Co. v. Tab Transportation, Inc*. (1995) 12 Cal.4th 389, 399, fn 4; *Filipino Accountants' Assn. v. State Bd. of Accountancy* (1984) 155 Cal.App.3d 1023, 1029; 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 342,

p. 392.)  In other words, "one good reason is sufficient to sustain the order . . . ." (*Sutter Health Uninsured Pricing Cases* (2009) 171 Cal.App.4th 495, 513.)

Next, defendant argues that "having prosecuted [him] for possession of the gun on the theory that he resided at the Dutton Avenue address, the prosecution was estopped from arguing that [he] lacked standing."  Defendant is in essence arguing that the prosecution took contradictory positions during the course of the proceedings prior to judgment.  However, it is important to note that defendant makes this point in the context of attacking the suppression ruling.  He cannot do so by using subsequent prosecutorial positions or arguments, because review of that ruling is confined to the record made before the trial court at the time the ruling was made.  (*People v. Moore* (2006) 39 Cal.4th 168, 171; *In re Arturo D*. (2002) 27 Cal.4th 60, 78, fn. 18.)  " '[T]he logical fallacy of "post hoc ergo propter hoc" (after the fact, therefore before the fact)' does not carry the day." (*Miranda v. Bomel Const. Co., Inc.* (2010) 187 Cal.App.4th 1326, 1339.)

Finally, defendant asserts that he "did not receive a full hearing on the motion." His position is that "[s]ince [he] had standing to challenge the search of the Dutton Avenue residence, he was entitled to a full hearing so that he could establish that the search at issue was harassing and thereby constitutionally unreasonable."  This is inartful phrasing that verges on the misleading.  Defendant does not actually assert that he was prevented from calling additional witnesses or submitting additional evidence.  He does not specify how he was frustrated in attempting to subpoena witnesses to testify at the hearing.  He does not identify the witnesses he had ready to testify, but which the trial court refused to hear.  He does not cite to where the record shows him protesting a prematurely terminated hearing, and the transcript of the hearing shows that nothing of the kind occurred.  Lastly, we do not forget that it was defendant's motion that was being heard, and that the sole ground of that motion was the harassment to which defendant had been subjected.  There was consequently no question of defendant being taken by surprise.

### The Gang-Related Penalties Are Supported
### By Substantial Evidence

The penalties imposed by section 186.22 apply to:

"Any person who actively participates in any criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, and who willfully promotes, furthers, or assists in any felonious conduct by members of that gang, shall be punished by imprisonment in a county jail for a period not to exceed one year, or by imprisonment in the state prison for 16 months, or two or three years." (§ 186.22, subd. (a) (subdivision (a)).)

"[A]ny person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members, shall, upon conviction of that felony, in addition and consecutive to the punishment prescribed for the felony . . . , be punished" by receiving specified terms ranging from two years to life. (§ 186.22, subd. (b)(1) (subdivision (b)(1)).)

Subdivision (a) prescribes " 'active gang participation where the defendant promotes or assists felonious conduct by the gang. It is a substantive offense whose gravamen is the participation in the gang itself.' " (*People v. Ferraez* (2003) 112 Cal.App.4th 925, 930.) By contrast, subdivision (b)(1) is a sentence enhancement. (*People v. Briceno* (2004) 34 Cal.4th 451, 459-460 & fn. 7.)

Defendant's claims that in several respects the judgment is not supported by substantial evidence are to be evaluated according to well-established criteria. "To assess the evidence's sufficiency, we review the whole record to determine whether *any* rational trier of fact could have found the essential elements of the crime . . . beyond a reasonable doubt. . . . In applying the test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the [trier of fact] could reasonably have deduced from the evidence. [Citation.] 'Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge . . . to determine the credibility

7

of a witness and the truth or falsity of the facts upon which a determination depends . . . .'
[Citation.]  A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support" the [trier of fact's decision.]  [Citation.]  [¶] The same standard governs in cases where the prosecution relies primarily on circumstantial evidence.  [Citation.]"  (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)  The same rules apply to sentence enhancements.  (*People v. Albillar* (2010) 51 Cal.4th 47, 59-60.)

Defendant first argues that "there was insufficient evidence to support the gang enhancement clause under section 186.22(b)(1)(A)" in that "the gang expert did not present any evidence that the act of *felonious* possession of a gun could benefit a gang." Defendant is imposing something subdivision (b)(1) does not require.  To establish an allegation under subdivision (b)(1), the prosecution must prove two elements, that: (1) the crime for which the defendant was convicted had been committed for the benefit of, at the direction of, or in association with any criminal street gang, and (2) the defendant committed the crime with the specific intent to promote, further, or assist in any criminal conduct by gang members.  (*People v. Gardeley* (1996) 14 Cal.4th 605, 616-617, 622.)  The underlying crime here was defendant's possession of a firearm.  That possession was felonious as to defendant because of his status as a convicted felon. Subdivision (b)(1) does not require the gang also have knowledge of that status.  The possession need not be felonious in order to benefit the gang and promote its activities.

Defendant next argues that even if Detective Sinigiani "had opined that felonious possession of a gun, as opposed to merely possession of a gun, could benefit a gang, there was insufficient evidence that appellant possessed the gun with the specific intent to benefit a gang."  In *People v. Albillar*, *supra*, 51 Cal.4th 47, our Supreme Court rejected the argument that "section 186.22(b)(1) requires the specific intent to promote, further, or assist a *gang-related* crime.  The enhancement already requires proof that the defendant commit a gang-related crime in the first prong—that the defendant be convicted of a felony committed for the benefit of, at the direction of, or in association with a criminal street gang.  (*People v. Gardeley*, *supra*, 14 Cal.4th at pp. 621-622.)  There is no further

requirement that the defendant act with the specific intent to promote, further, or assist a gang; the statute requires only the specific intent to promote, further, or assist criminal conduct by *gang members*." (*Id.* at p. 67; see *People v. Morales* (2003) 112 Cal.App.4th 1176, 1198 ["specific intent to benefit the gang is not required"]; accord, *People v. Leon* (2008) 161 Cal.App.4th 149, 163.)

Defendant's third argument is that "[f]or similar reasons, there was insufficient evidence to support the section 186.22(a) conviction. Other than gang offenses, the only conduct at issue was the felonious gun possession. There was no evidence of any other specific felonious gang conduct that appellant might have promoted or assisted. As there was insufficient evidence to show that appellant feloniously possessed the gun to benefit a gang; there similarly insufficient evidence to show that appellant promoted or assisted any gang in his felonious possession of the gun." Most of this argument misperceives the nature of what a subdivision (a) conviction requires.

"The elements of the gang participation offense in section 186.22(a) are: First, active participation in a criminal street gang, in the sense of participation that is more than nominal or passive; second, knowledge that the gang's members engage in or have engaged in a pattern of criminal gang activity; and third, the willful promotion, furtherance, or assistance in any felonious criminal conduct by members of that gang." (*People v. Rodriguez* (2012) 55 Cal.4th 1125, 1130.) Defendant is quite mistaken in seeing the entirety of the record as going no further than whether he possessed the weapon found at 1690 Dutton Street.

A reasonable inference from Detective Sinigiani's testimony—and one we must assume was drawn by the jury (*People v. Albillar*, *supra*, 51 Cal.4th 47, 59-60; *People v. Zamudio*, *supra*, 43 Cal.4th 327, 357)—was that defendant was acting as a conduit for gang communications from within the prison system. No inference was needed for the jury to accept Sinigiani's testimony that defendant was involved in Norteño fights. Or for the jury to accept his testimony that defendant's possession of the weapon would "constitute a benefit for the gang."

9

In light of the foregoing, we conclude that none of defendant's challenges to either his subdivision (a) conviction or his subdivision (b)(1) enhancement is sound.

### The Jury's Determination That Defendant Possessed The Firearm Is Supported By Substantial Evidence

Defendant next contends that his conviction for violating former section 12021 should be overturned because there no substantial evidence that he possessed the firearm found in his sister's home. Defendant's contention to this effect is based on *People v. Sifuentes* (2011) 195 Cal.App.4th 1410 The evidence in that case was summarized as follows:

"On the morning of May 11, 2007, Costa Mesa police officers checked the registry of a motel near Santa Ana known for drug and prostitution activities. They learned Sifuentes, a convicted felon with an outstanding 'no-bail' parole arrest warrant, had rented room 215.

"The motel clerk gave the officers a master room key. The officers knocked on room 215's door, identified themselves, stated they had a warrant, and demanded entry. Receiving no response after two attempts, and seeing the window blinds move and hearing movement inside, the officers entered the room. Sifuentes lay on top of the bed nearest the door. He attempted to rise, but one of the officers pushed him down on the bed and ordered him to stay down.

"Lopez, also a convicted felon, knelt on the floor on the far side of the second bed, facing the officers. There were two women in the room. One lay naked under the sheets of the bed closest to Lopez. The other stood near the bathroom, wrapped in a towel.

"An officer ordered Lopez to raise his hands. Lopez raised only his left hand and looked down at his right, with his arm bent at the elbow. After three demands to raise his right hand, he complied. An officer later found a loaded .40 caliber semiautomatic handgun under the mattress next to Lopez." (*Sifuentes*, *supra*, at pp. 1413-1414.)

Like defendant, Sifuentes was convicted of violating former section 12021. The Court of Appeal reversed, concluding that substantial evidence did not establish that Sifuentes had the right of control of the gun and thus constructive possession of it.

10

(*Sifuentes*, *supra*, at pp. 1417-1420.) All the prosecution had was that "Sifuentes and Lopez simply occupied a motel room with two females," and "mere proximity to the weapon, standing alone, is not sufficient evidence of possession." (*Id*., at pp. 1418, 1417.) *Sifuentes* is factually distinguishable.

There could be no dispute that in *Sifuentes* the gun was discovered in a room with four people. The prosecutor's argument that Sifuentes possessed the gun was badly undercut by the undisputed evidence that the gun was located closer to Lopez than to Sifuentes. Here, the initial issue for the jury was whether they believed the testimony of defendant's sister's that many people had access to the bedroom where the gun was discovered, and thus many people could presumably have put it there. Again, we must assume that the jury did believe Detective Sinigiani's testimony that he found only information, i.e., the "paperwork," linking defendant to the contents of the room in which the gun was found, and did not believe his sister's testimony that the room was nonexclusive. Moreover, this was not space impersonally and transitorily occupied, but a room in a residence occupied by a relative, a room where defendant had indisputably stayed and to which he had continual access. Very much to the point, defendant was there at the house when it was searched. And the "paperwork" found was not just old bills, but very important documents necessary for day-to-day existence, hardly the sort of material one would put in a place where quick retrieval would be difficult. In sum, that defendant had the right to control the contents of the room would be a reasonable deduction we must assume the jury made. (*People v. Zamudio*, *supra*, 43 Cal.4th 327, 357.) Or, put another way, that the jury agreed with Detective Sinigiani's testimony that defendant "exercised the same control over that firearm" as he did over "all of his personal . . . items in that room."

The issue here was whether defendant had constructive possession of the weapon. That issue can be decided on the basis of "circumstantial evidence and any reasonable inferences drawn from such evidence." (*People v. White* (1969) 71 Cal.2d 80, 82-83.) Unlike *Sifuentes*, the record here has more than ample circumstantial evidence from

11

which the jury could conclude that defendant had constructive possession of the weapon found at 1690 Dutton Street on the afternoon of April 22, 2010.

## The Trial Court Did Not Err In Answering
## The Jury's Question

The jury was instructed with CALCRIM 2511 as follows:  "Two or more people may possess something at the same time.  [¶] A person does not have to actually hold or touch something to possess it.  It is enough if the person has control over it or the right to control it, either personally or through another person."  After the jury began deliberating, the following occurred between court and counsel:

"THE COURT:  We have a question from the jury . . . [¶] I have . . . instruction 2511.  Additionally, on that instruction, the third paragraph from the bottom, someone in pen had bracketed a sentence that says:  'A person does not have to actually hold or touch something to possess it.  It is enough if the person has control over it or the right to control it, either personally or through another person.'  So that was attached to the note.  The note reads, 'One, we are looking for clarification of Section 2511 . . . paragraph third from the bottom beginning with quote "A person does not have to " end quote.

"Very grammatically correct and precise in how they are stating their question.

" 'Number two does readily access imply control?'  And it is signed by four jurors.

" . . . My first inclination is the words that they are asking for further definition have normal common English meaning, that there is no technical or further description the Court would give . . . .  [¶] In sum and substance I would answer you are to give the common English meaning to the words and in following 2511."

The prosecutor agreed with this approach, but defense counsel believed that under *Sifuentes*, "I think you are going to have to tell them readily accessible does not equate to control."

The court then advised:  "What I would propose is to say something along these lines, because it is their specific question.  I didn't mean to suggest that I wasn't going to help them.  [¶] The question is does readily access imply control.  That's a jury question.

12

What I intend to answer then is whether ready access convinces you beyond a reasonable doubt that the defendant has control or a right to control pursuant to instruction 2511 is a jury question, or words to that effect."

The prosecutor has no objection to this, but defendant insisted that the jury was asking "a legal question, does access . . . readily access or accessible equal control." And for answering that inquiry, "I think it is appropriate for pinpoint instruction at this point, access versus control." The court declined to do so:

"THE COURT: I'm not going to give them a pinpoint instruction. 2511 captures exactly what you said in [is] the law, that's what they are to find . . . . I think 2511 adequately explains the law and is consistent with *Sifuentes*. I don't think anything is additionally helpful. I think it is too early in the deliberations to give a pinpoint or move them along . . . . So I intend to give them essentially what I just read."

Defendant contends the trial court "erroneously denied [his] motion for a pinpoint instruction on possession." This is somewhat misleading because a true pinpoint instruction would have been an issue in the instructions the jury received before it began deliberating. Defendant does not claim that CALCRIM is legally erroneous. A pinpoint instruction is not required if it involves an issue adequately addressed by other instructions. (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 99.) CALCRIM 2511 told the jury that tactile contact was not required to establish possession. The idea that a person could be in the near vicinity of a weapon, could have access to the weapon, and yet not be in possession, would appear logically, if conversely, to be included within that principle.

## The Trial Court Erred In Denying Defendant's *Romero* Motion

Defendant was sentenced to the mitigated term of 16 months for violating former section 12021. That figure was doubled to 32 months by command of the Three Strikes law (§ 1170.12) because he had a 2006 conviction for aggravated assault (former § 245,

13

subd. (a)(1)).[5] The court imposed, but stayed, a three-year gang-related enhancement for that offense (§ 186.22, subd. (b)(1)), and 16 consecutive months for the substantive offense of active gang participation (§ 186.22, subd. (a)). Defendant was sentenced to a consecutive term of five years under section 667, but the one-year term under section 667.5 was stayed.

Defendant's final contention is that his *Romero* motion was erroneously denied. He does not challenge the denial on the usual grounds that his prior is the relatively rare prior felony conviction that is outside the spirit of the Three Strikes law. (See, e.g., *People v. Carmony* (2004) 33 Cal.4th 367, 376-378.) Instead, he argues the purely legal point that his 2006 conviction for assault by means of force likely to produce great bodily was not properly treated as a strike. Defendant is correct.

"In and of itself, the wobbler offense of assault by means of force likely to produce great bodily injury (§ 245, subs. (a)(1) [currently subd. (a)(4)]), when a felony sentence is imposed, does not constitute a 'serious felony' (§ 1192.7, subs. (c)(8)) for purposes of the Three Strikes law" unless it is accompanied by either the personal infliction of great bodily injury or the personal use of a firearm. (*People v. Feyrer* (2010) 48 Cal.4th 426, 443, fn. 8 and decisions cited; § 667.5, subd.(c)(8).) In 2006, defendant was convicted of his third gang-related assault, but it was his first and only conviction as an adult. Neither personal use of a firearm nor personal infliction of great bodily injury was involved. Shortly before defendant was paroled after serving two years for that offense, the sentencing court made an order finding this offense "to be a non serious felony." Thus, the trial court here was incorrect in characterizing defendant's prior "as a strike because . . . 245, by law, qualifies as a strike." This error requires a remand for resentencing.

---

[5] Since 2012, the substance of former subdivision (a)(1) has been in subdivision (a)(4).

14

## DISPOSITION

The sentence is vacated, and the cause remanded for resentencing.  The judgment of conviction is affirmed in all other respects.

_____
Richman, J.

We concur:


_____
Kline, P.J.


_____
Haerle, J.

15