[No. F051748. Fifth Dist. Dec. 27, 2007.]

THE PEOPLE, Plaintiff and Appellant, v.
JOHN PEREZ MEDINA, JR., Defendant and Respondent.

## COUNSEL

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, John G. McLean and Doris A. Calandra, Deputy Attorneys General, for Plaintiff and Appellant.

Richard J. Krech, under appointment by the Court of Appeal, for Defendant and Respondent.

## OPINION

**KANE, J.**—The trial court granted defendant John Perez Medina, Jr.'s motion to suppress evidence discovered during a suspicionless probation search of his residence conducted solely based on defendant's probation search condition. The People appeal. We will reverse.

## FACTUAL AND PROCEDURAL SUMMARY

A Bakersfield police officer stopped defendant's vehicle due to an inoperative taillight. Defendant pulled into the driveway of his house and stopped. Defendant told the officer it was his house. The officer asked defendant for his identification and conducted a records check that showed defendant was on felony probation subject to search for narcotics and paraphernalia. The officer searched defendant and his car, but found no contraband. The officer then asked defendant for his house keys, which defendant provided. The officer rang the doorbell and defendant's father answered the door. The officer told him he was there to conduct a probation search on defendant. The father said he understood and he directed the officer to defendant's room. Based solely on the search condition of defendant's probation, the officer searched defendant's room and found a small amount of methamphetamine on a dresser.

The Kern County District Attorney charged defendant with possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a); count 1), posses-

sion of ammunition by a felon (Pen. Code, § 12316, subd. (b)(1); count 2),[1] and operation of a vehicle with an inoperable rear taillight (Veh. Code, § 24600; count 3).

Defendant filed a motion to suppress evidence (Pen. Code, § 1538.5), which the court granted. The court dismissed the case on its own motion.

## DISCUSSION

In granting defendant's motion to suppress, the trial court cited *United States v. Knights* (2001) 534 U.S. 112 [151 L.Ed.2d 497, 122 S.Ct. 587] (*Knights*) and concluded "[t]here existed no facts which would suggest a search was necessary or reasonable." (Capitalization omitted.) The People argue *Knights* is inapplicable and the law in California continues to permit suspicionless searches of probationers. Although defendant relied on *Knights* at the suppression hearing, he now acknowledges it does not answer the question presented here. Instead, he contends the search was unreasonable under the Fourth Amendment because there was no reasonable suspicion of criminal activity. The People reply, and we agree, that defendant fails to recognize that the basis for the validity of a probation search is consent, not reasonableness under a general Fourth Amendment analysis.

When we review a trial court's ruling on a suppression motion, we defer to the court's factual findings that are supported by substantial evidence. (*People v. Hughes* (2002) 27 Cal.4th 287, 327 [116 Cal.Rptr.2d 401, 39 P.3d 432].) Whether a search is constitutionally reasonable, however, is a legal question upon which we exercise our independent judgment. (*Ibid.*)

■ A residence search conducted without a warrant is presumed unreasonable unless it comes within an exception to the warrant requirement. (*Katz v. United States* (1967) 389 U.S. 347, 357 [19 L.Ed.2d 576, 88 S.Ct. 507].) One such exception is the consent to search. (*Schneckloth v. Bustamonte* (1973) 412 U.S. 218, 219 [36 L.Ed.2d 854, 93 S.Ct. 2041]; *People v. Bravo* (1987) 43 Cal.3d 600, 609 [238 Cal.Rptr. 282, 738 P.2d 336] (*Bravo*); *People v. Mason* (1971) 5 Cal.3d 759, 765 [97 Cal.Rptr. 302, 488 P.2d 630], disapproved on another ground in *People v. Lent* (1975) 15 Cal.3d 481, 486, fn. 1 [124 Cal.Rptr. 905, 541 P.2d 545].) ■ In California, probationers

---

[1] We assume ammunition was also found in the search.

consent in advance, as a condition of their probation, to warrantless searches and seizures in exchange for the opportunity to avoid serving a state prison term. (*Bravo, supra,* 43 Cal.3d at p. 608; *People v. Mason, supra,* at pp. 764–766.) Warrantless searches of probationers are justified because they aid in deterring further offenses by the probationer and in monitoring compliance with the terms of probation. (*People v. Mason, supra,* at pp. 763–764; see *Bravo, supra,* at p. 610.) "By allowing close supervision of probationers, probation search conditions serve to promote rehabilitation and reduce recidivism while helping to protect the community from potential harm by probationers. [Citation.]" (*People v. Robles* (2000) 23 Cal.4th 789, 795 [97 Cal.Rptr.2d 914, 3 P.3d 311].)

■ A probationer's consent is considered "a complete waiver of that probationer's Fourth Amendment rights, save only his right to object to harassment or searches conducted in an unreasonable manner. [Citation.]" (*Bravo, supra,* 43 Cal.3d at p. 607.) " '[A] probationer who has been granted the privilege of probation on condition that he submit at any time to a warrantless search may have no reasonable expectation of traditional Fourth Amendment protection.' [Citation.] Consequently, 'when [a] defendant in order to obtain probation specifically agree[s] to permit at any time a warrantless search of his person, car and house, he voluntarily waive[s] whatever claim of privacy he might otherwise have had.' [Citation.]" (*Ibid.*)[2]

---

[2] The *Bravo* court explained further: "Probation is not a right, but a privilege. 'If the defendant considers the conditions of probation more harsh than the sentence the court would otherwise impose, he has the right to refuse probation and undergo the sentence. [Citations.]' [Citations.] A probationer's waiver of his Fourth Amendment rights is no less voluntary than the waiver of rights by a defendant who pleads guilty to gain the benefits of a plea bargain. [Citations.] Were we to conclude that a probationer's waiver of Fourth Amendment rights were either impermissible or limited to searches conducted only upon a reasonable-suspicion standard, the opportunity to choose probation might well be denied to many felons by judges whose willingness to offer the defendant probation in lieu of prison is predicated upon knowledge that the defendant will be subject to search at any time for a proper probation or law enforcement purpose. We see no basis for denying a defendant the right to waive his Fourth Amendment rights in order to accept the benefits of probation." (*Bravo, supra,* 43 Cal.3d at pp. 608–609.)

"Our interpretation of the scope of [defendant's] consent in agreeing to the search condition of his probation is consistent with the dual purpose of such a provision 'to deter further offenses by the probationer and to ascertain whether he is complying with the terms of his probation' [citation]. . . . ' "With knowledge he may be subject to a search by law enforcement officers at any time, [the probationer] will be less inclined to have narcotics or dangerous drugs in his possession. The purpose of an unexpected, unprovoked search of defendant is to ascertain whether he is complying with the terms of probation; to determine not only whether he disobeys the law, but also whether he obeys the law. Information obtained under such circumstances would afford a valuable measure of the effectiveness of the supervision given the defendant and his amenability to rehabilitation." [Citation.]' " (*Bravo, supra,* 43 Cal.3d at p. 610.)

Accordingly, the California Supreme Court has held that a search of a probationer pursuant to a search condition may be conducted *without any reasonable suspicion of criminal activity* and that such a search does not violate the Fourth Amendment. (43 Cal.3d at pp. 607–609, 611 [probation search pursuant to search condition does not require reasonable suspicion].)[3]

■ As already mentioned, there are some limitations on the probation search. First, "[a] waiver of Fourth Amendment rights as a condition of probation does not permit searches undertaken for harassment or searches for arbitrary or capricious reasons." (*Bravo, supra,* 43 Cal.3d at p. 610.) A search is arbitrary and capricious when the motivation for it is unrelated to rehabilitative, reformative or legitimate law enforcement purposes, or when it is motivated by personal animosity toward the probationer. It must be reasonably related to the purposes of probation. (*People v. Robles, supra,* 23 Cal.4th at p. 797; *Bravo, supra,* at pp. 610–611.) In addition, a search could become unconstitutionally unreasonable if conducted too often or at an unreasonable hour, or if unreasonably prolonged, or if conducted for other reasons establishing arbitrary or oppressive conduct by the searching officer. (See *People v. Reyes* (1998) 19 Cal.4th 743, 753–754 [80 Cal.Rptr.2d 734, 968 P.2d 445].) Finally, the officer must be aware of the search condition before conducting the search; after-acquired knowledge will not justify the search. (See *People v. Sanders* (2003) 31 Cal.4th 318, 335 [2 Cal.Rptr.3d 630, 73 P.3d 496] [suspicionless parole search of residence not justified by search condition of which officer was unaware].)

In summary, under California law, a search conducted pursuant to a known probation search condition, even if conducted without reasonable suspicion of criminal activity, does not violate the Fourth Amendment as long as the search is not undertaken for harassment or for arbitrary or capricious reasons or in an unreasonable manner. (*Bravo, supra,* 43 Cal.3d at p. 610.)

---

[3] Defendant asserts that the cases cited by the People contain facts to support "some articulable suspicion of wrongdoing," and therefore the People inaccurately state that "[w]ithout exception, the California Supreme Court has recognized that a probationer subject to a search condition may be searched based solely on that search condition, without particularized suspicion of wrongdoing." We agree that some cases contain facts supporting suspicion, but we do not agree that California law therefore *requires* suspicion. *Bravo* states the general proposition that a search of a probationer pursuant to a search condition may be conducted without any reasonable suspicion of criminal activity. (*Bravo, supra,* 43 Cal.3d at pp. 609–611.)

The trial court in this case relied not on California law, but on *Knights*, a United States Supreme Court case, which, as we will explain, does not resolve the issue in this case.

In *Knights*, the probationer and a friend were suspected of committing arson and vandalizing Pacific Gas & Electric (PG & E) property. An officer saw the probationer's friend leaving the probationer's apartment around 3:00 a.m. with what appeared to be pipe bombs. When the officer looked in the back of the friend's truck, he saw PG & E padlocks and various explosive materials. Based on his observations, the officer searched the probationer's apartment pursuant to a probation search condition. (*Knights, supra*, 534 U.S. at pp. 114–115.) The Ninth Circuit Court of Appeals found the search was invalid because it was conducted for investigatory rather than probationary purposes. (*Id.* at p. 116.) The Supreme Court rejected this distinction, noting that nothing in the probationer's search condition suggested it was confined to searches bearing upon probationary status. (*Ibid.*) In analyzing the search, the court applied a general Fourth Amendment analysis, rather than a consent or special needs rationale. The court unanimously concluded that the probationer's acceptance of a clear and unambiguous search condition "significantly diminished [the probationer's] reasonable expectation of privacy" (*Knights, supra*, p. 120), and that the warrantless search of the probationer's apartment, based on both a probation search condition *and* reasonable suspicion of criminal activity, was reasonable within the meaning of the Fourth Amendment (*Knights, supra*, at p. 122).

In light of this conclusion, the *Knights* court expressly declined to reach the issue whether "acceptance of the search condition constituted consent in the *Schneckloth* sense of a complete waiver of his Fourth Amendment rights." (*Knights, supra*, 534 U.S. at p. 118.) Moreover, the court expressly declined to decide whether a probation search *without* reasonable suspicion satisfies the reasonableness requirement of the Fourth Amendment. (*Knights, supra*, at p. 120, fn. 6.) Thus, *Knights* did not consider the question relevant to the present case: whether reasonable suspicion is *required* (and not just sufficient) for a search pursuant to a probation condition.

More recently, in *Samson v. California* (2006) 547 U.S. 843 [165 L.Ed.2d 250, 126 S.Ct. 2193] (*Samson*), the court addressed a suspicionless search of a *parolee*.[4] The court acknowledged that the question before it was a variant

---

[4] The California Supreme Court has similarly held that a suspicionless parole search does not violate a parolee's expectation of privacy under the Fourth Amendment. (*People v. Reyes, supra*, 19 Cal.4th at pp. 751, 754 [where the search is for a proper purpose, even in the absence of particularized suspicion, a search conducted under the auspices of a properly imposed parole search condition does not intrude on any expectation of privacy society is prepared to recognize as legitimate].)

of the question it left unanswered in *Knights*: "whether a condition of release can so diminish or eliminate a released prisoner's reasonable expectation of privacy that a suspicionless search by a law enforcement officer would not offend the Fourth Amendment." (*Samson, supra,* at p. 847 [126 S.Ct. at p. 2196].)

In *Samson*, an officer observed a parolee walking down a street with a woman and child. Based solely on the parolee's status, the officer searched him and found a baggie of methamphetamine. Again, the Supreme Court applied a general Fourth Amendment approach, concluding the parolee "did not have an expectation of privacy that society would recognize as legitimate," whereas California's interest in supervising parolees to reduce recidivism—an interest served by the state's ability to conduct suspicionless parolee searches—was substantial. (*Samson, supra,* 547 U.S. at p. 852 [126 S.Ct. at p. 2199].) Because most parolees are ill prepared for reintegration and require intense supervision, the California Legislature had concluded "a requirement that searches be based on individualized suspicion would undermine the State's ability to effectively supervise parolees and protect the public from criminal acts by reoffenders. [The court believed t]his conclusion makes eminent sense. Imposing a reasonable suspicion requirement . . . would give parolees greater opportunity to anticipate searches and conceal criminality. [Citations.] Th[e] Court concluded that the incentive-to-conceal concern justified an 'intensive' system for supervising probationers in *Griffin* [*v. Wisconsin* (1987) 483 U.S. 868 [97 L.Ed.2d 709, 107 S.Ct. 3164]]. That concern applies with even greater force to a system of supervising parolees."[5] (*Samson, supra,* 547 U.S. at pp. 854–855 [126 S.Ct. at pp. 2200–2201].)

---

[5] In *Griffin v. Wisconsin, supra,* 483 U.S. 868, under the " 'special needs' " rationale, the court held that a warrantless search of a probationer's residence was reasonable under the Fourth Amendment because it was conducted pursuant to a regulation governing probationers, which required " 'reasonable grounds' " to believe contraband was present and which itself satisfied the Fourth Amendment's reasonableness requirement under well-established principles. (*Griffin v. Wisconsin,* at pp. 870–871, 873, 880.) The court explained that "[a] State's operation of a probation system . . . presents 'special needs' beyond normal law enforcement that may justify departures from the usual warrant and probable-cause requirements . . . . Probation is simply one point (or, more accurately, one set of points) on a continuum of possible punishments ranging from solitary confinement in a maximum-security facility to a few hours of mandatory community service. A number of different options lie between those extremes, including confinement in a medium- or minimum-security facility, work-release programs, 'halfway houses,' and probation—which can itself be more or less confining depending upon the number and severity of restrictions imposed. [Citation.] To a greater or lesser degree, it is always true of probationers (as we have said it to be true of parolees) that they do not enjoy 'the absolute liberty to which every citizen is entitled, but only . . . conditional liberty properly dependent on observance of special [probation] restrictions.' [Citation.]" (*Id.* at pp. 873–874, fn. omitted.) The court concluded that "[s]upervision [of probationers] . . . is a 'special need' of the State permitting a degree of impingement upon privacy that would not be constitutional if applied to the public at large." (*Id.* at p. 875.)

After balancing these interests, the six-justice majority concluded "the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee." (*Id.* at p. 857 [126 S.Ct. at p. 2202].)[6]

The United States Supreme Court has not yet addressed whether a suspicionless probation search violates the Fourth Amendment. *Samson*'s reasoning that California's interests justify a supervisory scheme that allows suspicionless searches (*Samson, supra,* 547 U.S. at p. 854 [126 S.Ct. at p. 2200]) might apply to probationers as well as parolees. Although the court acknowledged that parolees have even fewer expectations of privacy than probationers "because parole is more akin to imprisonment than probation is to imprisonment" (*id.* at p. 850 [126 S.Ct. at p. 2198]), the court also reiterated that "a State's interests in reducing recidivism and thereby promoting reintegration and positive citizenship *among probationers and parolees* warrant privacy intrusions that would not otherwise be tolerated under the Fourth Amendment. [Citations.]" (*Id.* at p. 853 [126 S.Ct. at p. 2200], italics added.)

■ Nevertheless, until the United States Supreme Court provides direct authority, we are bound to follow the law of the California Supreme Court (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937]), which, as we have explained, has discussed this question in detail. ■ Under this state's body of law, a suspicionless search pursuant to a probation search condition is not prohibited by the Fourth Amendment. The trial court in this case therefore erred by granting defendant's motion to suppress the evidence gathered during such a search.[7]

---

[6] The dissent argued that the Fourth Amendment does not permit the conclusion that a search supported by neither individual suspicion nor special needs is nonetheless reasonable. (*Samson, supra,* 547 U.S. at p. 858 [126 S.Ct. at p. 2203] (dis. opn. of Stevens, J.).) The majority countered, as follows: "That simply is not the case. The touchstone of the Fourth Amendment is reasonableness, not individualized suspicion. Thus, while this Court's jurisprudence has often recognized that 'to accommodate public and private interests some quantum of individualized suspicion is usually a prerequisite to a constitutional search or seizure,' [citation], we have also recognized that the 'Fourth Amendment imposes no irreducible requirement of such suspicion,' [citation]. Therefore, although this Court has only sanctioned suspicionless searches in limited circumstances, namely programmatic and special needs searches, we have never held that these are the only limited circumstances in which searches absent individualized suspicion could be 'reasonable' under the Fourth Amendment. In light of California's earnest concerns respecting recidivism, public safety, and reintegration of parolees into productive society, and because the object of the Fourth Amendment is *reasonableness*, our decision today is far from remarkable. Nor, given our prior precedents and caveats, is it 'unprecedented.' [Citation.]" (*Id.* at p. 855, fn. 4 [126 S.Ct. at p. 2201.)

[7] Defendant contends, for the first time, that the search was arbitrary, capricious or harassing—simply because the officer conducted the search in the absence of any suspicion of criminal activity. This is not the test, as we have explained, and there are no other facts to support this claim.

## DISPOSITION

The order of dismissal is reversed. The case is remanded to the trial court with directions to vacate its order granting the motion to suppress and to enter a new order denying the motion to suppress.

Harris, Acting P. J., and Hill, J., concurred.

Respondent's petition for review by the Supreme Court was denied April 23, 2008, S160449. George, C. J., did not participate therein. Kennard, J., and Moreno, J., were of the opinion that the petition should be granted.