Filed 10/10/13  P. v. Parker CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Appellant, | E057160 |
| v. | (Super.Ct.No. INF1200078) |
| RONALD DUVERN PARKER, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County.  Anthony R. Villalobos and Charles Everett Stafford, Jr., Judges.  Affirmed.

Paul E. Zellerbach, District Attorney, Matt Reilly, Vincent Chen and Natalie M. Pitre, Deputy District Attorneys for Plaintiff and Appellant.

Alan S. Yockelson, under appointment by the Court of Appeal, for Defendant and Respondent.

The People filed an information charging defendant and respondent, Ronald Duvern Parker, with unlawful possession of methamphetamine and drug paraphernalia.

The trial court granted defendant's motion below to suppress evidence produced as a result of the detention and patdown search of defendant. The People were unable to proceed to trial after the court granted the motion to suppress. The trial court dismissed the case. The People now appeal, contending that the trial court erred in granting the motion to suppress. We affirm.

FACTS AND PROCEDURAL HISTORY

On January 1, 2011, Officer Nicholas Barth was on patrol in Palm Springs. At 12:27 a.m., i.e., just after the clock turned over into the new year, Officer Barth heard another officer announce on the radio that shots had been fired. Officer Barth was patrolling on North Palm Canyon Drive, and the suspected shots fired had occurred near a bar about a mile from Barth.

Officer Barth decided to investigate. He drove southbound on North Palm Canyon Drive, passing a convenience store and a hotel along the way. Officer Barth saw a man, later identified as defendant, walking northbound along North Palm Canyon Drive. The man wore a dark hooded sweatshirt, dark colored pants, and a flat-brimmed hat that he had pulled down, obscuring his face. The man was about one-fourth of a mile away from the bar where the shots had been reported. The short distance from the bar, together with the man's dark clothing, drew Officer Barth's attention. In addition, as Officer Barth drove past the man, the man appeared to look right at the officer; he then put his hands in his pockets and looked away. Officer Barth thought the man might be involved in a

2

shooting, because "it's common for somebody, if they have a weapon on them and they see police, to shove their hands where the weapon is."

Officer Barth was concerned for his safety if he decided to confront the man there on the street; instead, he decided to go to the convenience store to see if he could intercept the man there. Officer Barth advised dispatch that he would be on a pedestrian check, and described the man as a Hispanic male adult, wearing a dark hoodie and a hat.

A short time later, the man "came around the corner" near the store; Officer Barth "approached him on foot and asked him to place his hands upon his head and to turn away from me." Officer Barth testified that the man—later identified as defendant Ronald Parker—had only been out of his sight for a few seconds between the time he had seen defendant on the street, and the time he saw defendant in the store parking lot.

Officer Barth informed defendant that "I believed that he may have a weapon, and that I was going to perform a pat-down [*sic*]." Initially, Officer Barth confronted defendant alone, but three other officers arrived soon after. Officer Barth testified that he thought defendant might have a weapon because of the earlier "shots-fired" call at the bar. He also thought it was "easy to conceal a firearm in bagg[y] clothing. It's hard to see when someone is wearing bagg[y] clothing if they have something in their waistband. And the fact that he put his hands in his pockets upon seeing me."

Defendant complied with Officer Barth's order to put his hands on his head and turn around. Officer Barth performed a patdown search. Officer Barth also asked if

defendant was on probation or parole, and defendant stated that he was on parole. As he patted down the outside of defendant's sweatshirt pocket, Officer Barth felt a cylindrical object with a bulbous end, which he believed was a narcotics pipe. Officer Barth asked to search defendant's pockets; inside the sweatshirt pocket he found a black sock containing a glass methamphetamine pipe. He also found a small baggie containing suspected methamphetamine.

On February 22, 2012, the People filed an information charging defendant with possession of controlled substances (methamphetamine) and of drug paraphernalia (the pipe). The information also alleged one strike prior and three prison term prior offenses.

Defendant moved to suppress evidence under Penal Code section 1538.5. He argued that the search and seizure of his person violated the Fourth Amendment. The trial court granted the motion.

On the date set for trial, the People announced that they were unable to proceed, in the absence of the suppressed evidence. The trial court dismissed the case pursuant to Penal Code section 1385.

The People have filed a timely notice of appeal.

ANALYSIS

I. Standard of Review

"When we review a trial court's ruling on a suppression motion, we defer to the court's factual findings that are supported by substantial evidence. (*People v. Hughes* (2002) 27 Cal.4th 287, 327 [116 Cal.Rptr.2d 401, 39 P.3d 432].) Whether a search is

4

constitutionally reasonable, however, is a legal question upon which we exercise our independent judgment. (*Ibid.*)" (*People v. Medina* (2007) 158 Cal.App.4th 1571, 1575.)

## II. The Trial Court Properly Granted the Motion to Suppress Evidence

The People argue that Officer Barth articulated specific facts to justify a temporary detention of defendant. "A detention is reasonable under the Fourth Amendment when the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity." (*People v. Souza* (1994) 9 Cal.4th 224, 231.)

The facts relied upon are that Officer Barth heard a broadcast of a report of "shots fired," sometime shortly after midnight on New Year's Eve/early morning hours of New Year's Day. The shots had reportedly been fired just north of a named bar, about one mile from where Officer Barth was patrolling in Palm Springs. He decided to drive toward the bar along North Palm Canyon Road. He passed a convenience store and a hotel, and saw defendant walking along the road. Defendant was wearing dark clothing and a hat pulled down over his face. Defendant appeared to look at the officer, and then thrust his hands into the pockets of his hooded sweatshirt, and partially turned away. It was a "high-crime area." From these factors, Officer Barth decided that defendant must have been "involved in some sort of crime possibly related to the shooting."

The articulated facts were insufficient to support a reasonable suspicion that defendant had been involved in any criminal activity. As the court below stated, "You have to put it in context. This was January 1st, New Year's Eve, New Year's Day. The

5

shot situation, there was shots going off all over the valley over New Year's. In this particular case, we have a report of shots fired, but it's not definitive as to where it actually took place. We think it's around the Toucan's Bar area, but no one knows exactly where. [¶] There is no description of any possible subject that might be involved in the shooting; no description whatsoever. The officer that testified is some distance away when he gets the call that he heard that shots were fired in the general vicinity of Toucan's Bar, and he proceed[s] in that direction. [¶] He [sees] an individual walking on the street, not doing anything other than walking down the street. It's not unusual for people to be out and about a little after midnight on New Year's Eve, New Year's night. So just being out on the street that is not unusual. The dress that the individual was in – – while some people might view the clothing as what someone might be wearing if they were engaged in criminal activity, a hoodie in this day and age is a popular item of clothing."

The court also considered the officer's actions inconsistent with his stated beliefs. "If the officer had some basis to believe that this individual was involved in a shooting just minutes prior – – I don't think an officer at that point in time would have allowed the gentleman to leave that area where he was first observed, to give him an opportunity to leave, or to get rid of [the] weapon, or to whatever. I don't think an officer fully believing that this individual was armed and part of a shooting would have let him go."

Officer Barth had also called in his pedestrian check of a Hispanic male. The court commented particularly on this: "This officer, for some reason, believes that the person he saw was Hispanic," but there was no call or other information indicating the nationality or ethnicity of any particular shooter. At the hearing, Officer Barth testified that, "the hat was pulled down over his face. Like I said, it was pulled down over his face so far down that he was hard to identify. I thought this was a Hispanic male." The court queried, "If he was wearing a hoodie and wearing a hat and the hat was pulled down over his face, and he was wearing baggy pants, how did you ascertain whether or not he was Hispanic?" Officer Barth admitted, "I don't know." Although no one at the hearing clearly came out and said so, inferentially from the court's focus on Officer Barth's identification of the subject as "Hispanic," and Officer Barth's admission that he did not know why he thought the subject was Hispanic, defendant evidently was not Hispanic. The court had "real concerns in my mind how he was able to indicate that the individual was Hispanic, and that basically he ran that over the radio that he was stopping somebody that was Hispanic when he had nothing upon which to base."

Further, "it was not a pedestrian stop. He didn't ask the individual who he was and why he was in the area. That's a pedestrian stop. This was where he basically had in his mind that he was involved in a shooting, and he had a weapon. It was based on a hunch. It was based on speculation in the officer's mind, not based on anything substantive that would give a person reasonable cause to believe that he was involved in a shooting or had a weapon."

Defendant's actions were "normal activity," which did not give a reasonable suspicion of anything criminal or untoward. "The individual is just walking down the street wearing certain clothes, not doing anything at a time when it is reasonable to assume that there would be a lot of people walking around, not only in that area but probably all over Palm Springs and the valley. It's after midnight on New Year's Eve and New Year's morning. That's not unusual conduct."

The trial court properly found that the evidence was insufficient to raise an objectively reasonable suspicion that defendant was engaged in any criminal activity whatsoever, and certainly nothing upon which to base any belief that defendant had a weapon. The detention was not justified.

The patdown search was also unlawful. During a temporary detention, an officer may be justified in conducting a brief patdown search, "[w]hen an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others." (*Terry* v. *Ohio* (1968) 392 U.S. 1, 24 [88 S.Ct. 1868, 20 L.Ed.2d 889].) Here, however, as already indicated, Officer Barth had no articulable reason to believe that defendant was armed or dangerous. The unjustified belief that defendant may have been armed was the entire reason for the detention in the first place. The absence of any evidence to suggest that defendant was armed precluded not only the detention, but also any justification for a patdown search.

The trial court properly granted defendant's motion to suppress the evidence produced as a result of the search.

8

## DISPOSITION

The trial court properly granted defendant's motion below to suppress the evidence obtained as the result of an unlawful detention and search. The judgment of dismissal, based on the People's inability to proceed, is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER _____
                                                            J.

We concur:


HOLLENHORST _____
                    Acting P. J.


MILLER _____
                        J.

9