Filed 11/5/15  Alvarado v.  City of Pasadena CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| WILLIAM ALVARADO, | B259669 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC520072) |
| v. | |
| CITY OF PASADENA, et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County, Kevin C. Brazile, Judge.  Affirmed.

Law Offices of H. Douglas Daniel and H. Douglas Daniel for Plaintiff and Appellant.

Michele Beal Bagneris, City Attorney, and Frank Rhemrev, Assistant City Attorney, City of Pasadena, for Defendants and Respondents.

_____

William Alvarado sued the City of Pasadena and two of its police officers, Ara Bzdigian and Javier Aguilar (hereafter the "City"), for malicious prosecution. The City filed a motion for summary judgment pursuant to Code of Civil Procedure section 437c,[1] which the trial court granted. Alvarado appeals, contending the trial court erred when it found no triable issues of material fact on the element of probable cause. We conclude the trial court ruled correctly in favor of the City. Accordingly, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

A.      *The Initial Investigation and Prosecution*

Back in 2001, Alvarado was suspected of committing several crimes investigated by the Pasadena Police Department (PPD). A judge of the Los Angeles Superior Court signed two warrants for his arrest in case Nos. GA047125 (issued August 22, 2001 -- $15,000 bail for an alleged violation of Penal Code section 459) and GA047156 (issued August 27, 2001 -- $30,000 bail for an alleged violations of Vehicle Code section 10851 and Penal Code section 496, subdivision (a)).

On August 30, 2001, PPD Officers Ara Bzdigian, Javier Aguilar and Corporal Terysa A. Rojas, executed the arrest warrants at Alvarado's residence in Monrovia where he lived with his mother and sister. Alvarado was arrested. Alvarado claims Officers Bzdigian and Aguilar entered the home without consent, searched the common area, and found methamphetamine and a handgun.

PPD's discovery of the handgun and methamphetamine led to the filing of an additional case, No. GA047235, alleging violations of Health and Safety Code sections 11351 and 11378, and Penal Code section 12021, subdivision (d).

On September 18, 2001, Alvarado settled all three of his criminal cases. In exchange for a change of plea to two counts and one enhancement (burglary in GA047125; drug and gang allegation in GA047235), he was given a concurrent

---

**1**      All further undesignated references are to the Code of Civil Procedure.

probationary sentence of three years formal probation and 270 days in the county jail. The remaining case (GA047156) and counts (in case GA047235) were dismissed.

B.    *Deportation and Motion to Vacate Plea*

Subsequent to his jail term, Alvarado was detained by U.S. Immigration and Customs Enforcement and deported to Guatemala. In 2006, he returned to the United States and was deported again. When Alvarado came back again in 2009, to undo the cause of his past deportations, he hired an attorney and filed a motion to vacate his pleas in case Nos. GA047235 and GA047125. On March 22, 2012, a judge of the Los Angeles Superior Court granted the motions and vacated the pleas. At that time, the criminal complaints were reinstated. On December 11, 2012, the Los Angeles County District Attorney's Office announced that they were unable to proceed and Alvarado's criminal cases were dismissed.[2]

C.    *Filing the Malicious Prosecution Complaint*

On August 30, 2013, Alvarado filed a complaint in Los Angeles County Superior Court alleging violations of his civil rights under Title 42 United States Code section 1983.[3] He sued the City listing causes of action for (1) Conspiracy to Violate

---

[2]    The declaration of Susan Steinfeld, Assistant Head Deputy of the Pasadena Branch Office for the Los Angeles County District Attorney's Office indicates the evidence necessary to successfully prosecute Alvarado had been destroyed due to the passage of time.

[3]    Title 42 United States Code section 1983 states, **"**Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act

3

Civil Rights through False Imprisonment; (2) Malicious Prosecution; (3) Unlawful Search and Seizure; and (4) Intentional Infliction of Emotional Distress. Although the record is unclear, both parties agree only the cause of action for malicious prosecution proceeded.[4]

The City filed a motion for summary judgment. Alvarado filed an opposition. Considering the three elements required to prove malicious prosecution, the trial court found material factual disputes on favorable termination and malice. However, it found no dispute of material facts on the element of probable cause and granted the motion. In reaching this conclusion, the trial court stated:

> "The Court finds there is <u>no</u> triable issue of material fact as to whether [the City] had probable cause to search [Alvarado's] residence. [Alvarado] was on formal probation, there was a warrant for his arrest, and he was subject to search terms. The Parties do not dispute these facts. A search of the surrounding area incident to the arrest for safety reasons is justified in any arrest, which is essentially what [Alvarado] argues. *However, the nuance in this case is that [Alvarado] was on formal probation and was subject to warrantless searches at any time*. [The City] had probable cause to conduct the search of the living room and kitchen that resulted in the discovery of the drugs and gun. . . ."

Alvarado filed a timely notice of appeal.

## DISCUSSION

### I.  *Law on Summary Judgment Motion*

A defendant moving for summary judgment must show that one or more elements of a cause of action cannot be established or that there is a complete defense to the cause of action. (§ 437c, subd. (p)(2); *Miller v. Department of Corrections* (2005) 36 Cal.4th

---

of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

[4]    Alvarado claims he abandoned the other three causes of action. The City claims the trial court sustained a demurrer as to all causes of action except for malicious prosecution. Clarity on this point is not necessary to resolve this appeal.

446, 460.)  Once the defendant's burden has been met, the plaintiff is required to show a triable issue of material fact as to the cause of action or defense.  (§ 437c, subd. (p)(2).)  A triable issue of fact is created when the evidence reasonably permits the trier of fact, under the applicable standard of proof, to find the purportedly contested fact in favor of the party opposing the motion.  (*Lugtu v. California Highway Patrol* (2001) 26 Cal.4th 703, 722.)  The plaintiff may not rely on the allegations in his pleadings but must set forth the specific facts showing the triable issue.  (§ 437c, subd. (p)(2).)

We review the record de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained.  We liberally construe the evidence in support of the plaintiff opposing summary judgment and resolve doubts concerning the evidence in his favor.  (§ 437c, subd. (c); *Yanowitz v. L'Oreal USA, Inc*. (2005) 36 Cal.4th 1028, 1037; *AARTS Productions, Inc. v. Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064-1065.)

## II.     *Malicious Prosecution*

"To prevail on a malicious prosecution claim, the plaintiff must show that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination favorable to the plaintiff; (2) was brought without probable cause; and (3) was initiated with malice.  [Citation.]"  (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 292.)  The elements are the same when the alleged malicious prosecution is based on a prior criminal proceeding.  (*Centers v. Dollar Markets* (1950) 99 Cal.App.2d 534, 540.)

The parties limit the scope of this appeal to whether the trial court erred when it found no material dispute existed on the question of probable cause.  Specifically, Alvarado argues "[t]he trial court erred in granting summary judgment as to Alvarado's malicious prosecution cause of action by finding that probable cause existed to prosecute Alvarado for the drug charge when they blatantly committed an unlawful search of his premises in violation of his Fourth Amendment constitutional rights."  As such, we narrow our review only to the issues raised on appeal.

5

A.     Lack of Probable Cause

The validity of an arrest may be challenged on constitutional grounds, and, if such an arrest is determined to be unconstitutional, it may give rise to a claim under Title 42 United States Code section 1983.  (*Bretz v. Kelman* (1985) 773 F.2d 1026, 1030-1031 (*Bretz*) ["An incorrect arrest does not provide grounds for a claim of deprivation of liberty without due process if the arrest was made pursuant to a valid warrant based upon probable cause.  [Citation.]  While innocence (or, as in the present case, acquittal after trial) may be relevant to a tort claim for false imprisonment, it is largely irrelevant to a claim of deprivation of liberty without due process of the law.  [Citation.]  Nevertheless, if an arrest is made in bad faith, there may be a cause of action under § 1983 as an illegal, unconstitutional arrest.  [Citations.]"

The *Bretz* Court explained, "[w]e have held that malicious prosecution generally does not constitute a deprivation of liberty without due process of law and is not a federal constitutional tort if process is available within the state judicial systems to remedy such wrongs.  [Citation.]  But, we have also held that an exception exists to the general rule when a malicious prosecution is conducted with the intent to deprive a person of equal protection of the laws or is otherwise intended to subject a person to a denial of constitutional rights."  (*Bretz, supra,* 773 F.2d at p. 1031.)

Thus rather than answering the question of probable cause for Alvarado's alleged criminal conduct listed in the police report, i.e., whether he illegally possessed a handgun and methamphetamine, we instead assess whether Alvarado's arrest was constitutionally valid.  This turns on the nature and scope of the search and any exceptions that may apply under the Fourth Amendment search and seizure jurisprudence.

*(1)     The Parties Contentions*

The parties do not dispute officers Rojas and Aguilar searched the dresser drawer in the living room within Alvarado's residence where the handgun and methamphetamine

were located.  The police report indicates Alvarado had already been detained when the search was conducted.

The City argues Alvarado was on probation subject to search conditions at the time of the search on August 30, 2001.  Alvarado contends the City presented no evidence he was subject to search conditions.  Alvarado additionally argues the trial court erred in holding the evidence was "undisputed" he was subject to search conditions.  Switching gears to address the doctrine of "search incident to an arrest," Alvarado argues the trial court erred in holding the warrantless search was justified because of safety concerns.  Alvarado further contends the search was unrelated to the arrest warrant for burglary and was thus unreasonable and unconstitutional.  He next argues, even if probable cause is found, it was "vitiated by [the City's] unreasonable and bad-faith conduct at the time of and subsequent to Alvarado's arrest."  Lastly, Alvarado claims a "controversy as to what facts were known to the malicious prosecution defendant at the time the action was initiated or prosecuted presents a question of fact for the trier of fact."

*(2)     Analysis*

"A residence search conducted without a warrant is presumed unreasonable unless it comes within an exception to the warrant requirement.  [Citation.]  One such exception is the consent to search.  [Citations.]  In California, probationers consent in advance, as a condition of their probation, to warrantless searches and seizures in exchange for the opportunity to avoid serving a state prison term.  [Citations.]  Warrantless searches of probationers are justified because they aid in deterring further offenses by the probationer and in monitoring compliance with the terms of probation.  [Citations.]  'By allowing close supervision of probationers, probation search conditions serve to promote rehabilitation and reduce recidivism while helping to protect the community from potential harm by probationers.  [Citation.]'  [Citation.]"  (*People v. Medina* (2007) 158 Cal.App.4th 1571, 1575-1576 (*Medina*).)

It is well settled that a defendant has a right to refuse probation.  (*In re Osslo* (1958) 51 Cal.2d 371, 377.)  Furthermore, as explained in *Medina*, a probationer's

7

consent to a search condition is a complete waiver of his or her Fourth Amendment rights. (*Medina, supra,* 158 Cal.App.4th at p. 1576.) Thus, if the City's evidence established Alvarado accepted the grant of probation and search conditions, they established Alvarado waived his Fourth Amendment rights and consented in advance to warrantless searches.

The City relies on the testimony given by [former] Corporal Rojas.[5] Rojas testified at a deposition for the underlying case that she knew Alvarado from her time as a gang officer. She stated, "I know him from when I was a gang officer. I had made contact with him several times. In addition, after that, he became an informant on several different cases." She continued, "We've kept in contact. Basically, he will call me if he needs something. He called me when he was deported. I had contact with him in a federal institution in -- I think it was east of Phoenix, when my homicide partner and I went out to question him regarding a homicide. He wasn't involved in that, it was just his gang were suspects in that homicide."

Rojas went on to testify, "I recall I was a corporal . . . and two of the officers that worked the gang unit . . . Bzdigian . . . and . . . Aguilar, came to me and stated that they wanted to go and check if William Alvarado was home. He was on probation with search and seizure, and I believe he also had an arrest warrant. [¶] And they came to me because any time we would go to a home where we're gonna do a probation search, they have to check to make sure he has search and seizure conditions, the warrant is still in the system, so we don't go there unlawfully. So that was all checked out. I made sure that – that was part of my duties to make sure those things are done prior to going to a location."

The record on appeal does not show any objections to this evidence. Indeed, evidentiary objections must be made in writing before the summary judgment hearing or orally at the hearing in order to preserve the issue on appeal. (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 530.) Alvarado complains on appeal Rojas's testimony is "speculative,

---

[5] The deposition for Rojas took place on April 28, 2014. When the deposition was taken, Corporal Rojas had been promoted to lieutenant.

not based on personal knowledge, is vague[.]" These, however, are evidentiary objections that needed to be made at the summary judgment hearing. If not made, they are deemed waived. (§ 437c, subd. (b)(5).)

The City's evidence shows Rojas previously worked the gang detail, knew Alvarado personally as a gang member, had multiple contacts with him, and knew he had been an informant on several investigations. From this, she testified Alvarado was on probation with search conditions. While she did not testify as to the exact wording of the search condition, none is necessary. The only reasonable inference based on her testimony ("any time we would go to a home where we're gonna do a probation search") is that the officers checked to make sure the search conditions included the search of his residence.

Alvarado contends the extent of Rojas's knowledge is a factual dispute for the trier of fact. We do not agree. Alvarado had an opportunity to rebut Rojas's testimony but chose not to challenge it. (§ 437c, subd. (p)(2).) He was in the best position to counter her testimony and present contrary evidence. As it is, Rojas's testimony is established without any evidence to rebut it. We hold the City presented evidence Alvarado was on probation subject to search conditions that included his home and that this evidence is undisputed.

We address Alvarado's remaining contentions. Next, Alvarado contends the search was unreasonable and unconstitutional because it was not related to the arrest warrant for burglary. This contention is without merit.

In California, search conditions accepted by the probationer who has a right to refuse probation are considered consent to search. (*People v. Bravo* (1987) 43 Cal.3d 600, 607.) "Accordingly, the California Supreme Court has held that a search of a probationer pursuant to a search condition may be conducted *without any reasonable suspicion of criminal activity* and that such a search does not violate the Fourth Amendment. [Citation.]" (*Medina, supra,* 158 Cal.App.4th at p. 1577.) The City's search required no connection to the arrest for burglary.

9

We need not address Alvarado's contention regarding the permissible scope of a search conducted incident to an arrest as Alvarado's consent to search pursuant to a probation search resolves the constitutionality of the search.

Alvarado's remaining contention relates to the "fruit of the poisonous tree" doctrine. He contends, "[a]ssuming, *arguendo*, that [the City] did have probable cause, said probable cause was vitiated by [the City's] unreasonable and bad-faith conduct at the time of and subsequent to Alvarado's arrest[.]" Alvarado's request is legally untenable.

The purpose of the "fruit of the poisonous tree doctrine" is to exclude derivative evidence obtained from an initial illegal search. (*People v. Werner* (2012) 207 Cal.App.4th 1195, 1213.) If law enforcement conducts an illegal search and obtains incriminatory information, the use of that illegally obtained information affects the downward chain of all other evidence obtained from that source. For example, if a police officer uses the illegally obtained information and seeks a search warrant, the subsequent search and any evidence obtained in the secondary search may be subject to exclusion under the fruit of the poisonous tree doctrine.

The policy for the exclusionary rule is to deter police misconduct. (*United States v. Leon* (1984) 468 U.S. 897, 909.) It is a judicially created rule, where once the trial court determines police misconduct has occurred, the court excludes the evidence obtained from the misconduct to prevent similar misconduct in the future.

In California, criminal defendants may statutorily move to suppress evidence obtained from an alleged violation of their Fourth Amendment rights under Penal Code, section 1538.5.[6] In a suppression motion, the defendant has the burden of raising the

---

[6] Penal Code section 1538.5 states in pertinent part:
(a)(1) A defendant may move for the return of property or to suppress as evidence any tangible or intangible thing obtained as a result of a search or seizure on either of the following grounds:
(A) The search or seizure without a warrant was unreasonable.
(B) The search or seizure with a warrant was unreasonable because any of the following apply:
(i) The warrant is insufficient on its face.
(ii) The property or evidence obtained is not that described in the warrant.

constitutional violation. Once done, the burden shifts to the prosecution to prove the search was reasonable under the circumstances. (*People v. Williams* (1999) 20 Cal.4th 119, 130.) In such a hearing, the court is specifically called upon, using a preponderance of the evidence standard, to determine whether a constitutional violation occurred. If a violation is found, the trial court may apply the exclusionary rule to suppress evidence, including evidence tainted as a fruit of the poisonous tree. (*Wong Sun v. United States* (1963) 371 U.S. 471, 484-485.)

This rule and its policy has no application in a summary judgment motion. The role of the trial court, in assessing whether a summary judgment should be granted, has nothing to do with deciding whether to suppress evidence because of a violation of the plaintiff's Fourth Amendment rights. In a summary judgment motion, the trial court does not adjudicate whether police misconduct actually happened. Instead, "[t]he purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute. [Citation.]" (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) The court does not punish anyone when it grants a summary judgment motion. Instead, we decide whether based on the parties' evidence, the case should proceed to trial. We therefore decline Alvarado's argument to apply the fruit of the poisonous tree doctrine and its underlying policy in the summary judgment context.

Having analyzed all of Alvarado's contentions, we hold, as did the trial court, that no triable issues of material fact exist on the element of probable cause.

---

(iii) There was not probable cause for the issuance of the warrant.
(iv) The method of execution of the warrant violated federal or state constitutional standards.
(v) There was any other violation of federal or state constitutional standards.

## DISPOSITION

The trial court's order granting the summary judgment motion pursuant to section 437c is affirmed.  Respondents shall recover their costs on appeal.


OHTA, J.[*]

WE CONCUR:



BIGELOW, P.J.



GRIMES, J.

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.